Luvenia D. ROGERS, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent,

and

Aggie Rogers, Intervenor.

No. 95–3497.

United States Court of Appeals,
Federal Circuit.

June 25, 1996.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
Aug. 13, 1996.

Edward L. Pina, Karam, Kruger, Mery &
Pina, San Antonio, Texas, argued, for peti-
tioner. With him on the brief was Janis
Hillman.

Hillary A. Stern, Attorney, Commercial
Litigation Branch, Civil Division, Depart-
ment of Justice, Washington, D.C., argued,
for respondent. With her on the brief were
Frank W. Hunger, Assistant Attorney Gen-
eral, David M. Cohen, Director, and Kirk
Manhardt, Assistant Director.

Edith U. Fierst, Fierst & Moss, P.C.,
Washington, DC, argued, for intervenor.
With her on the brief was Anne E. Moss,
Alhambra, CA.

Before PLAGER, RADER, and SCHALL,
Circuit Judges.

SCHALL, Circuit Judge.

Luvenia D. Rogers ("Luvenia") appeals the
March 30, 1995 final decision of the Merit
Systems Protection Board ("Board") in Dock-
et No. AT–0831–93–0042–I–1. In its deci-
sion, the Board reversed the initial decision

of the Administrative Judge ("AJ") that sustained the reconsideration decision of the Office of Personnel Management ("OPM") awarding a civil service survivor annuity to Luvenia as the widow of Girard Rogers ("Girard"), a deceased federal employee. OPM awarded the annuity to Luvenia over the competing claim of Aggie Rogers ("Aggie"), who also had been married to Girard. The Board awarded the annuity to Aggie as the widow of Girard. Because we hold that, under applicable state law, Aggie is barred by the doctrine of laches from challenging the presumptively valid later marriage of Luvenia and Girard, we reverse, and remand with the instruction that the annuity be awarded to Luvenia.

## BACKGROUND

We note at the outset that the scope of our review in an appeal of a Board decision is limited. We must affirm the decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1994). In this case, the Board accepted the AJ's findings of fact even though it reversed her initial decision. Supporting the AJ's findings are her credibility determinations, which are "virtually unreviewable." *Hambsch v. Department of the Treasury*, 796 F.2d 430, 436 (Fed.Cir.1986). Since none of the parties have shown that the AJ's findings are not supported by substantial evidence, those findings are controlling. They are as follows:

### I.

Aggie and Girard were married in Mobile, Alabama, on January 26, 1950, and lived together there. Luvenia also resided in Mobile. At the time, Girard was employed in the federal civil service by the Air Force at Brookley Air Force Base. In March 1950, Luvenia gave birth to Girard's child, Argie. Three months later, Aggie gave birth to Girard's child, Jimmie. In May 1951, Luvenia gave birth to her and Girard's second child, Frang. Two months later, Aggie gave birth to her and Girard's second child, Girard, Jr.

Aggie knew that Girard was having an extramarital affair during this time, even though Girard denied it when she asked him.

Luvenia refused to marry Girard until he divorced Aggie. In 1952, Girard told Luvenia that he and Aggie were divorced, and Luvenia believed him. In fact, however, Girard never divorced Aggie. Luvenia and Girard were married in a ceremony ·held in Pascagoula, Mississippi, on April 4, 1952.

Beginning in 1952, Luvenia and Girard lived together in Mobile with their children. Aggie also continued to live in Mobile with her and Girard's children. Luvenia and Girard had three more children together: Kennith, born in 1953; Michael, born in 1955; and Willie, born in 1960. Girard came home every night, and the family attended church together in Mobile, where Girard was a deacon. Luvenia and Girard filed income tax returns as husband and wife each year from 1952 until Girard's death.

After Luvenia and Girard married, Girard continued to support the children that he had with Aggie. Luvenia knew of this support. In addition, Aggie gave birth to her and Girard's third child, Bernard, in October 1953. Some of Aggie's children by Girard and some of Luvenia's children by Girard went to high school together in Mobile.

In 1967, Girard was transferred to Kelly Air Force Base in San Antonio, Texas. Luvenia and the children remained in Mobile until August 1968 so that Argie and Frang could finish high school there. After Girard and Luvenia moved to San Antonio, Girard occasionally visited Mobile, and at least one of Aggie and Girard's children visited Luvenia and Girard at their home in San Antonio on several occasions. In June 1968, Aggie gave birth to her and Girard's fourth child, Shylda. Luvenia knew that Shylda was Girard's child.

In 1977, Girard purchased a house in Mobile for Aggie and his children by Aggie. The deed to the house listed Girard and Aggie as "husband and wife." Luvenia knew that Girard had purchased the house for Aggie and her children, but did not know about the "husband and wife" language.

Girard retired from government service in 1981, and died in 1987. In his will, he left his

entire estate to Luvenia. In addition, he designated Luvenia as the beneficiary of his civil service survivor annuity.

## II.

Aggie and Luvenia each sought, as Girard's widow, a survivor annuity from OPM. Finding that only one person can receive a deceased employee's survivor annuity, OPM sought to resolve the conflicting claims. OPM initially awarded the annuity to Luvenia. Aggie requested a reconsideration of OPM's initial decision and, on November 10, 1988, OPM issued a reconsideration decision awarding the annuity to Aggie.

Luvenia appealed OPM's reconsideration decision to the Board. Aggie intervened, claiming that Luvenia's appeal was untimely. In an initial decision dated November 8, 1989, an AJ held Luvenia's appeal timely, reversed OPM's reconsideration decision, and awarded the annuity to Luvenia. The AJ found that Aggie, knowing of Girard's marriage to Luvenia, had failed to protect her position as Girard's spouse.

Aggie filed a petition for review of the AJ's initial decision. She argued, in part, that the AJ had erred in holding Luvenia's appeal timely. The Board vacated the AJ's decision on August 8, 1990, and remanded the case for a determination on the timeliness issue. On remand, the AJ held that Luvenia's appeal had been untimely filed, and dismissed her appeal. Luvenia filed a petition for review, which was denied on April 17, 1991. Luvenia then filed an appeal with this court. On February 6, 1992, we affirmed the Board's decision in an unpublished opinion. *Rogers v. Office of Personnel Management*, 956 F.2d 1172 (Fed.Cir.1992) (table).

On July 21, 1992, OPM issued *sua sponte* a new reconsideration decision (the "1992 reconsideration decision"), reversing its earlier reconsideration and awarding the annuity to Luvenia. In so doing, OPM stated that it was persuaded by the AJ's November 8, 1989 initial decision on the merits that had been vacated by the Board.

Aggie appealed the 1992 reconsideration decision to the Board. Luvenia intervened and raised against Aggie's annuity claim the affirmative defense of laches. The AJ rendered an initial decision on February 11, 1993. As a preliminary matter, the AJ rejected Aggie's arguments that OPM was barred by the doctrine of *res judicata* from reversing its prior decision in favor of Aggie and that the 1992 reconsideration decision was untimely. On the merits, after holding an evidentiary hearing, the AJ ruled in favor of Luvenia.

■ 5 U.S.C § 8341 (1994) governs survivor annuities of federal civil service employees. The statute provides that the "widow" of an employee is entitled, subject to some exceptions not at issue here, to a survivor annuity. *See* 5 U.S.C. §§ 8341(b), (d). Section 8341(a) defines "widow" as "the surviving wife of an employee ... who (A) was married to him for at least 9 months immediately before his death; or (B) is the mother of issue by that marriage." Both Aggie and Luvenia meet parts (A) and (B) of § 8341(a). Thus, in deciding whether Aggie or Luvenia was the proper recipient of the survivor annuity, the task before the Board was to determine whether Aggie or Luvenia was Girard's "surviving wife." Legal and equitable principles of applicable state law are used to determine who is the "surviving wife" under § 8341. *See Money v. Office of Personnel Management*, 811 F.2d 1474, 1478–79 (Fed. Cir.1987).

Applying the law of Texas, where Girard was domiciled at the time of his death, the AJ noted that Texas law recognizes a presumption of validity in favor of the latest marriage (in this case, Luvenia and Girard's marriage). *See* Texas Fam.Code § 2.01 (1996); *Rodriguez v. Avalos*, 567 S.W.2d 85, 87 (Tex.Civ.App.1978) (section 2.01 of the Texas Family Code codified well-established Texas law). The AJ also noted that this presumption may be overcome by a conclusive demonstration of no divorce dissolving a previous marriage. *See Schacht v. Schacht*, 435 S.W.2d 197, 201 (Tex.Civ.App.1968). The AJ stated that Aggie had presented evidence to overcome the presumption in favor of the validity of Luvenia's marriage to Girard with proof that she (Aggie) and Girard had never been divorced. The AJ noted, however, that, under Texas law, a previous spouse may be

barred from challenging the validity of a later marriage if, after gaining knowledge sufficient to support an action to protect her position, she unreasonably delays in taking such action to the detriment of the legal rights of the later spouse. *See Simpson v. Simpson,* 380 S.W.2d 855, 861 (Tex.Civ.App. 1964). Applying this law, the AJ framed the issue before her as follows: "[T]he pivotal question is whether [Aggie] had knowledge that Girard and Luvenia were conducting themselves as husband and wife, and if so, whether [Aggie] unreasonably delayed taking action to protect her position as lawful spouse to Luvenia's detriment." Addressing this question, the AJ found that Aggie was aware of Girard's marital relationship with Luvenia. Indeed, the AJ stated that she believed Aggie was "not telling the truth" when she asserted that she was unaware that Girard and Luvenia were living together as husband and wife. The AJ concluded that Aggie's 35–year delay in challenging Luvenia and Girard's later marriage was an unreasonable delay which "worked to the detriment of Luvenia by preventing her from protecting her position as a subsequent good faith spouse." Accordingly, the AJ held that, under Texas law, Aggie was barred by laches from challenging the validity of Luvenia and Girard's more recent marriage. Consequently, Luvenia enjoyed the status of "surviving wife" under § 8341 and thus was entitled to the survivor annuity.

Aggie petitioned for review. The Board determined that the petition did not meet the criteria for review set forth in 5 C.F.R. § 1201.115 (1994), but reopened the appeal on its own motion.

As had the AJ, the Board rejected Aggie's *res judicata* and timeliness arguments. The Board stated that because it had decided the previous appeal on procedural grounds, *i.e.,* timeliness, and because there had been no final Board decision on the merits, the doctrine of *res judicata* did not bar OPM from reconsidering its decision. In rejecting the timeliness argument, the Board stated that the determination of whether a reconsideration decision is timely involves a balancing test, specifically "balancing the desirability of finality and the public interest in reaching

what ultimately appears to be the right result." Applying that test, the Board noted that it had made "no final adjudicatory decision on the merits in [the] appeal." It further noted that the 1992 reconsideration decision came less than five-and-one-half months after this court's final decision on the timeliness of Luvenia's appeal, and that OPM was convinced—by the logic of the AJ's November 8, 1989 initial decision—that the correct and lawful result was that Luvenia should receive the annuity. The Board concluded that, under these circumstances, the 1992 reconsideration decision was not untimely.

On the merits, the Board accepted the findings of fact underlying the AJ's decision, and agreed with her framing of the issue under 5 U.S.C. § 8341 and Texas law. The Board also agreed with the AJ's conclusion that Aggie unreasonably delayed in protecting her legal rights. The Board disagreed, however, with the AJ's determination that the delay worked to Luvenia's detriment. The Board stated that Luvenia had not "satisfied her burden of alleging and showing a good faith change in position or injury as a result of [Aggie's] delay." The Board explained that Luvenia "remained as the decedent's putative spouse for 35 years without a change in position as to her detriment." The Board went on to state that "we ... do not discern ... how prejudice to [Luvenia] would arise from anything other than an adverse decision by this Board on the merits." Based on this analysis, the Board held that Aggie was not barred from challenging Luvenia and Girard's marriage. Thus, the Board held, Aggie was Girard's "surviving wife" under § 8341(a) and therefore was entitled to the survivor annuity as his "widow." This appeal by Luvenia followed. OPM, as Respondent, and Aggie, as Intervenor, urge that we affirm the Board's decision.

## DISCUSSION

### I.

Our standard of review is set forth above. Preliminarily, Aggie contends that the Board erred in upholding OPM's reopening of the case. In that regard, she makes the same *res judicata* and timeliness arguments that

475

she raised before the Board. Neither of these contentions has merit, however.

In reopening the case and awarding the annuity to Luvenia, OPM was merely making an administrative decision to correct what it viewed as its previous mistaken and unlawful award of the annuity to Aggie. Aggie has presented no reason for us or the Board to apply *res judicata* to bar OPM from correcting itself in this case. *Cf. United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966) (*res judicata* may apply when an administrative agency acts in a judicial capacity); *Bio–Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1563–64 (Fed. Cir.1996) (same); *see also Johnson v. Sullivan*, 936 F.2d 974, 976 (7th Cir.1991) ("A refusal to reopen or a decision to apply administrative *res judicata* is a discretionary one not subject to judicial review."); *Poulin v. Bowen*, 817 F.2d 865, 869 (D.C.Cir.1987) (*res judicata* does not require dismissal when administrative law judge reopens a claim previously decided). The Board thus did not err in rejecting Luvenia's *res judicata* argument.

Neither will we disturb the Board's holding that OPM's reconsideration was not untimely and therefore not invalid. As mentioned above, the Board balanced several relevant factors in deciding that the 1992 reconsideration decision was not barred on timeliness grounds. We cannot say that the Board erred in concluding that OPM had not unreasonably delayed in reopening its previous decision.

## II.

■ Turning to the merits, we note that all three parties take the position that Texas law governs the question of whether Aggie or Luvenia is Girard's "surviving wife" for purposes of 5 U.S.C. § 8341(a). In addition, none of the parties argue that the Board misstated the applicable state law. We are not bound by concessions of law. *See Technicon Instruments Corp. v. Alpkem Corp.*, 866 F.2d 417, 421–22 (Fed.Cir.1989). We agree with the parties, however, that Texas law governs the substantive issue in this case, *see Money*, 811 F.2d at 1478–79, and we

discern no error in the Board's legal framework or its statement of applicable state law.

On appeal, Luvenia does not challenge the findings of fact underlying the Board's decision. Rather, she argues that the Board's conclusion that she suffered no detriment as a result of Aggie's unreasonable delay is unsupported by substantial evidence. Luvenia asserts that, because she suffered detriment as a result of Aggie's unreasonable delay, Aggie is barred by laches from challenging the validity of her and Girard's marriage. For her part, Aggie urges that we affirm the Board's decision. However, she challenges, as not supported by substantial evidence, the finding of the Board that she unreasonably delayed in asserting her rights as Girard's wife. OPM urges us to uphold the findings of the Board and to affirm the Board's decision awarding the survivor annuity to Aggie.

We reject Aggie's argument that substantial evidence does not support the Board's finding that she unreasonably delayed in asserting her rights. All of the circumstances of this case—including the two families living in the same city for fifteen years, the twenty-year absence of Girard from Mobile, the interaction between Aggie's and Luvenia's children by Girard, and Girard's remaining in Texas when he retired—make it hard to believe that Aggie did not know of Luvenia and Girard's marital relationship. Aggie herself confirmed that she "never challenged the rumored marriage between [Girard] and Luvenia." Moreover, as noted above, the AJ stated that Aggie was "not telling the truth" when she asserted that she was unaware that Luvenia and Girard were living together as husband and wife. In short, there is more than ample support in the record for the finding that Aggie was aware of Luvenia and Girard's marital relationship. Finally, the record reveals that, during the thirty-five years that Luvenia and Girard lived together as husband and wife, Aggie did not take any action at all to protect her marital rights, such as telling Luvenia that she and Girard were not divorced, even though Aggie was fully aware of Girard's and Luvenia's marital relationship. We will not disturb the Board's finding that Aggie's delay was unreasonable.

In arguing that the Board acted unlawfully in concluding that she suffered no detriment as a result of Aggie's unreasonable delay, Luvenia asserts that the record reveals that Aggie's delay caused her (Luvenia) to believe that she would be provided for in her later years by Girard's survivor annuity. She states that, absent Aggie's delay, she could have made provision for some other form of support. Moreover, Luvenia asserts, the record reveals that if Aggie had not unreasonably delayed, she could have attempted to resolve the issue of Girard's two marriages while Girard was alive.

OPM argues that Luvenia suffered no increased difficulty in litigating this case as a result of Aggie's delay. OPM further argues that the only other kind of prejudice that might arise from such delay is when a party stands to incur economic damages which likely would have been prevented by earlier suit. According to OPM, such damages were not incurred here. For her part, Aggie contends that Luvenia has not shown an injury of any kind.

We agree with Luvenia. We hold that the Board acted unlawfully in assessing the detriment suffered by Luvenia as a result of Aggie's unreasonable delay in asserting her rights as Girard's wife. The record allows no other conclusion but that Luvenia was prejudiced as a result of Aggie's delay. First, logic and common sense compel the conclusion that if Aggie had not delayed in asserting her rights, but had spoken up while Girard was alive, at the very least, Luvenia would have had the opportunity to attempt to persuade Girard to address the problem of his two wives, perhaps by seeking a proper divorce from Aggie. This opportunity was lost, however, through Aggie's delay. Second, as Luvenia asserts, she was prejudiced financially. Had she known that she would not in fact be the beneficiary of a civil service survivor annuity as Girard's widow, she could have undertaken alternative steps to provide for her future. For example, when Girard submitted his retirement application on June 25, 1981, he was given two options. As one option, he could select a survivor's annuity

for his widow at the rate of 55 percent of whatever portion of his annuity he specified as the base. As the other option, Girard could select an annuity without survivor benefit, in which event he would receive annuity payments during his life, but no payment would be made to his surviving spouse. Girard selected the first option and chose a survivor annuity that would be 55 percent of his entire annuity. Through Aggie's delay, Luvenia lost the opportunity to explore with Girard—in the face of what would have been assertions by Aggie that she was Girard's wife—the possibility of Girard selecting a reduced survivor annuity, or no survivor annuity at all, in order to provide for Luvenia during his lifetime. In short, the Board's conclusion that Luvenia did not suffer a detriment as a result of Aggie's unreasonable delay is not supported by substantial evidence.

■ Application of the equitable doctrine of laches is a discretionary matter. *See Cunniff v. Johnson*, 584 S.W.2d 543, 544–45 (Tex.Civ.App.1979). We see no need, however, for a remand for a determination, as a discretionary matter, of whether laches should bar Aggie from challenging the validity of Luvenia and Girard's marriage. On this record, given the length of Aggie's delay and the extent of the detriment suffered by Luvenia, it would be an abuse of discretion to find that laches does not apply. *See Meek v. Metropolitan Dade County*, 985 F.2d 1471, 1478 (11th Cir.1993) (no need to remand when the record clearly shows that only one result would satisfy the standard of review). Accordingly, we hold that Aggie is barred by laches from challenging the presumptively valid marriage of Luvenia and Girard. Consequently, Luvenia is entitled to the survivor annuity under § 8341 as the surviving wife—and thus the widow—of Girard.

## CONCLUSION

For the foregoing reasons, the decision of the Board is reversed. The case is remanded to the Board, which is directed to remand the appeal to OPM with the instruction that

OPM award Girard Rogers' survivor annuity to Luvenia Rogers.

*REVERSED* and *REMANDED with IN-STRUCTIONS.*

## COSTS

Each party shall bear their own costs.