NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3276

BILLY J. SAUNDERS,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.


Billy J. Saunders, of Roanoke, Virginia, pro se.

Courtney E. Sheehan, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With him on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Mark A. Melnick, Assistant Director.

Appealed from:  Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3276

BILLY J. SAUNDERS,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Petition for review of the Merit Systems Protection Board in DC0752070210-I-2.

_____

DECIDED: February 13, 2009

_____

Before NEWMAN, GAJARSA, and DYK <u>Circuit Judges.</u>

PER CURIAM.

Billy J. Saunders appeals the decision of the Merit Systems Protection Board ("MSPB" or "Board") which upheld his dismissal from employment with the United States Postal Service ("USPS"). We <u>affirm</u> the decision of the MSPB.

BACKGROUND

Mr. Saunders held the position of PS-11 Electronic Technician at the USPS's Roanoke, Virginia Processing and Distribution Center. The adverse action was based on an incident that occurred in April 2006. During the week of April 23-27, 2006 Mr. Saunders

was sent to a training center in Norman, Oklahoma to attend an Ink Jet Printer course. On April 26 Mr. Saunders was scheduled to take the final examination for the training course. Before taking the exam, Mr. Saunders approached three course instructors and told them that he was going to fail the course. The instructors testified that they attempted to reassure him, and told him that he needed to answer only five (out of 20) questions correctly. According to the instructors, Mr. Saunders responded by saying that he will fail the test on purpose, because he is in "a pissing contest" with his supervisor. As the instructors were trying to convince Mr. Saunders to take the test, he asked one of them if he had an "Uzi." The instructor informed Mr. Saunders that jokes about weapons were inappropriate. Once the test began, Mr. Saunders handed in a blank answer sheet within one minute. According to the instructors' testimony, Mr. Saunders appeared visibly upset.

The agency held a pre-disciplinary interview with Mr. Saunders. At the interview, he admitted making the remark about the Uzi, but maintained that it was merely a joke. He denied failing the course on purpose, maintaining that he could not concentrate. Following the interview, the agency issued a notice of proposed removal, listing two grounds for the proposed action. First, the notice charged Mr. Saunders with "improper conduct," and second, it charged him with "unsatisfactory performance." In support of the improper conduct charge the agency listed the events related to the failed exam and also accused Mr. Saunders of "lack of candor" during the pre-disciplinary interview. In support of the "unsatisfactory performance" charge the agency alleged that Mr. Saunders purposely failed to complete the training which was required of him. The agency noted that he had three prior suspensions for improper conduct, unsatisfactory attendance, and unsatisfactory performance. The proposal notice stated that the appellant was in violation of provisions of

the Employee and Labor Relations Manual §§685.16 and 662.1, which list regulations governing behavior of federal employees, as well as §665.24, which addresses violent or threatening behavior. The agency also pointed to the Joint Statement on Violence and Behavior in the Workplace, which requires employees to prevent work-related violence.

Mr. Saunders did not file a written response to the proposal notice, but he and his representative met with the deciding official to explain his side of the story. During the meeting, Mr. Saunders stated that he had forgotten to take his psychotropic medications with him to Oklahoma and that his behavior was a result of being undermedicated. He also stated that he has an aversion to flying and that the flight to Oklahoma was particularly turbulent. Mr. Saunders also stated that after returning to Virginia, he visited his personal physician who advised him that his medication dose was too low. This was the first time Mr. Saunders mentioned his medical problems. The deciding official found the charges to be supported by the evidence, and found that they warranted removal.

Mr. Saunders appealed to the MSPB. At the hearing he was represented by counsel. The Administrative Judge received the testimony of Ty Davis, a contractor who provided training in Oklahoma. Mr. Davis testified that Mr. Saunders told him that he planned to fail the course by choice. Mr. Davis also testified that Mr. Saunders did not mention any impairment such as inability to concentrate, lack of medication, or anything else. The witness also confirmed the Uzi remark and stated that because of Mr. Saunders' general agitated state and concern as to what Mr. Saunders might do, he, together with other instructors, reported the events to the team leader.

The Administrative Judge also received testimony from Miss Colby Burress, another instructor at the Oklahoma training center. Miss Buress' testimony tracked that of Mr.

Davis. Miss Buress further testified that in her opinion Mr. Saunders was not so upset as to be unable to take the test. She stated that she did not notice him trembling or shaking, that he did not request a delay, and did not state that he had any disability either then or at any previous time.

The next person to testify was Mr. Dennis Smith, Mr. Saunders' second-level supervisor. He testified that the training was of critical importance and that Mr. Saunders' position was the highest skilled of any of the agency's craft positions, and that before Mr. Saunders left for Oklahoma the importance of the course was impressed upon him. Mr. Smith also testified that the pre-disciplinary interview was the first time Mr. Saunders mentioned anything about his lack of medication. Mr. Smith stated that Mr. Saunders had previous problems with training he had been ordered to attend, and that one of the suspensions stemmed just such a problem. In a previous incident, the appellant presented a note from a physician recommending that he not travel by air. In response, the agency ordered a fit-for-duty examination. That examination concluded that he can travel by air and that any problems that he has could be managed by pre-flight medication.

The agency also presented the testimony of Miss Ann Longbottom, the deciding official. She testified that she met personally with Mr. Saunders, reviewed all of the written statements, and telephoned Mr. Davis to verify the information in the written submissions. She stated that Mr. Saunders submitted a progress note from his physician, that stated that he is to continue on his medications. She testified that she was unaware of any disability Mr. Saunders may have had and that he never requested any accommodation.

Mr. Saunders testified on his own behalf. He stated that he was receiving disability payments as a veteran and that he is being treated by psychiatrists for depression, anxiety,

and a bipolar condition. He testified that flying made him fearful and that the only reason he did it was at the agency's request. He stated that on this trip to Oklahoma he forgot his medication, but did not think that it would cause a problem. He also testified that he did not think of refilling his prescription in Oklahoma when he realized that there indeed was a problem. Mr. Saunders testified that he requested authorization to take a later return flight to Virginia, but that his supervisor instructed him to take his scheduled flight. According to Mr. Saunders, that exacerbated his stress. Because of the added stress, Mr. Saunders claimed that he was unable to concentrate during the exam. He admitted that he told the instructors that he was going to fail and that he was in a "pissing contest" with his supervisor, and that he was hoping that the failure would make the agency look bad. He also admitted making the Uzi comment, but said that he made it while crying because he was in a "meltdown." He apologized for making that comment and while he claimed that it was a joke, he admitted that the joke was inappropriate. Mr. Saunders also submitted a letter from Dr. Mohammad Ali, a psychiatrist, which stated that Mr. Saunders was seen on May 17, 2006 and that in the doctor's opinion "it is fair to surmise that his decompensation in April 2006, characterized by his crying spell, increased anxiety, lack of frustration tolerance, increased irritability and inappropriate speech, was most likely secondary to his noncompliance with his psychiatric medication during those four days in April 2006." On cross-examination, Mr. Saunders acknowledged that he was also seen by Dr. Sohi on May 2, 2006, and that the progress note from that visit stated that Mr. Saunders "wished to purposefully fail the test just to defy authority . . . and make the postal service look bad." Mr. Saunders also admitted that he did not inform anyone of his medical condition or about forgetting to bring his medicine to Oklahoma.

Finally, Mr. Saunders argued to the MSPB that he was subject to disparate treatment. He stated that two other employees, Carlos Foster and Robert Rosier, did not complete the training course, yet were not fired. It was stipulated that neither of those employees, unlike Mr. Saunders, was disabled. However, Mr. Smith testified that while Mr. Foster did not complete the course because of a disagreement with the housing supervisor at the site, the agency's investigation uncovered no evidence that would support a finding that Mr. Foster was responsible for any misconduct. With respect to Mr. Rosier, Mr. Smith testified that he left the training early because his mother had a medical emergency.

Upon consideration of all the testimony, the Administrative Judge ("AJ") upheld the agency's decision. The full Board denied review, and this appeal followed.

DISCUSSION

Decisions of the MSPB must be affirmed unless the decision is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. §7703(c); see Dickey v. OPM, 419 F.3d 1336, 1339 (Fed. Cir. 2005). "Substantial evidence is defined as: 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Bradley v. Veterans Admin., 900 F.2d 233, 234 (Fed. Cir. 1990) (quoting Consolidated Edison Co. v. Labor Board, 305 U.S. 197, 229 (1938)).

Mr. Saunders assigns three errors to the Board's decision. First, he states that "[t]he AJ erred as a matter of law by concluding that my performance was unsatisfactory" and in sustaining the charge of improper conduct. Second, he states that "[t]he AJ erred in finding my explanation for my speech and conduct 'inherently improbable.'" Third, he states that

the AJ failed to consider his medical condition as a ground for relief.

With respect to the first argument, in reviewing the decision of the AJ, we cannot conclude that it was unsupported by substantial evidence. "[I]n reviewing performance-based actions taken . . . this court must give deference to the judgment by each agency of the employee's performance in light of the agency's assessment of its own personnel needs and standards." Rogers v. Department of Defense Dependents Schools, Germany Region, 814 F.2d 1549, 1552-53 (Fed. Cir. 1987) (internal citations and quotations omitted). The agency submitted evidence in the form of testimony by Mr. Smith that the completion of the ink jet printer course was important to the performance of the duties assigned to Mr. Saunders. Under the statute, "'unacceptable performance' means performance of an employee which fails to meet established performance standards in one or more critical elements of such employee's position." 5 U.S.C. §4301(3). Mr. Saunders does not dispute that his performance failed to meet established performance standards. Because it is undisputed that Mr. Saunders failed to meet relevant performance standards, we are constrained to conclude that the finding of unacceptable performance is supported by substantial evidence. Likewise, we conclude this substantial evidence supported the AJ's determination that Mr. Saunders' explanation of why he failed the test lacked candor.[1]

The next assignment of error is that the AJ improperly refused to credit Mr. Saunders' explanation as to the cause of his behavior. The AJ found that Mr. Saunders' explanation for his conduct was inherently improbable. This finding goes to the credibility

---

[1]    Because the lack-of-candor specification is sufficient to sustain the charge of improper conduct, we need not determine if the specification concerning Mr. Saunders' comments about the Uzi is also sufficient. See Lachance v. Merit Sys. Protection Board, 147 F.3d 1367, 1371 (Fed. Cir. 1998).

of Mr. Saunders and other witnesses. Credibility findings are "virtually unreviewable," Rogers v. Office of Pers. Mgmt., 87 F.3d 471, 472 (Fed. Cir. 1996) (quoting Hambsch v. Dep't of Treasury, 796 F.2d 430, 436 (Fed. Cir. 1986)). Accordingly, we must affirm the AJ's determination on this issue.

As for the Mr. Saunders' contention that the AJ failed to consider his medical condition as an appropriate ground for relief, the record does not support the argument. In the AJ's opinion, he specifically discusses Mr. Saunders' mental condition. The AJ determined that despite Mr. Saunders' psychiatric problems he was not disabled within the meaning of 29 C.F.R. §1630.2(g) (defining disability). The AJ stated that he reviewed the submissions by physicians and came to the conclusion that Mr. Saunders did not show that he suffered from a disability that made it impossible for him to conform his conduct to the agency's standards. This decision is supported by substantial evidence, for a reasonable mind could conclude that since Mr. Saunders' medical condition was found to be well controlled by medication, and since he was found to be medically fit for duty, he was not disabled within the meaning of applicable regulations. Thus, although this presents a close question, it was fully explored at the MSPB, and the agency provided substantial evidence in support of its action and its ruling that medical considerations did not justify the behavior on which the removal was based.

As to the severity of the penalty, we cannot disturb the agency's penalty unless it is "unauthorized or exceeds the bounds of reasonableness because it is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion, or where the record is devoid of any basis demonstrating reasonableness." Dominguez v. Dep't of Air Force, 803 F.2d 680, 684 (Fed. Cir. 1986). On the findings of the Board, after

full hearing of the issues, we conclude that the agency did not "exceed the bounds of reasonableness" in dismissing Mr. Saunders.  For the foregoing reasons, the decision of the MSPB is affirmed.

Each party shall bear its costs.