Phillip E. CLARK, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 00–3239.

United States Court of Appeals,
Federal Circuit.

July 19, 2001.

H. Bayne Smith, of Piedmont, AL, for petitioner.

David Feniger, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. With him on the brief were David M. Cohen, Director, and Kathryn A. Bleeker, Assistant Director. Of counsel was Lance J. Lerman.

Before MICHEL, LOURIE, and LINN, Circuit Judges.

MICHEL, Circuit Judge.

Phillip Clark ("Clark") petitions for review of the final decision of the Merit Systems Protection Board ("Board"), made final on March 13, 2000, when the full Board declined to review the initial decision of the Administrative Judge ("AJ"). The AJ had affirmed the Office of Personnel Management's ("OPM") denial of Clark's application for the Basic Employee Death Benefit ("BEDB"), to which the surviving spouse of a federal employee is entitled if the employee worked for at least 18 months under the Federal Employees Retirement System ("FERS"). *Clark v. Office of Pers. Mgmt.*, No. AT–0843–99–683–I–1 (M.S.P.B. Oct. 14, 1999). As executor of the estate of Michael Clark ("Michael"), Clark filed a timely petition for review with this court under 5 U.S.C. § 7703 (1994), and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (1994). Because the federal statute regarding the BEDB, 5 U.S.C. § 8442(b) (1994), is silent as to whether a killer or his or her estate may receive federal death benefits earned by his or her victim, and because OPM concluded, based on the Alabama state authorities' substantial evidence, that Michael killed Melonie Clark ("Melonie"), OPM was thus correct in following the principle of Alabama law to prevent Michael's estate from collecting the BEDB earned by his victim. Accordingly, we affirm.

## Background

Melonie, a Department of Defense ("DOD") civilian employee at Fort McClel-lan, Alabama, was married to Michael. The couple had two children together. On August 19, 1994, allegedly in the midst of a child custody dispute, Michael traveled to the home of Melonie's parents, where Melonie and the children were temporarily staying. While the details of what occurred that day are not entirely clear, there was an exchange of gunfire that left Michael, Melonie and both of Melonie's parents dead.

The two children, ages three and seven, apparently witnessed the events. One of the children allegedly told investigators that his father had killed himself. An investigation by the Talladega County Sheriff's Office revealed that Michael intentionally caused the death of Melonie by shooting her, and that he then committed suicide. A postmortem examination found that Michael had been shot once in the abdomen and once in the hand before he committed suicide. The examination further revealed that the bullets which wounded Michael had been fired from a different gun than that which Michael used to commit suicide. Melonie's death certificate states that her death was a "homicide" caused by a "gunshot to face," and lists her time of death as 5:10 p.m., August 19, 1994. Michael's death certificate states that his death was a "suicide" caused by a "gunshot to head," and lists his time of death as 5:14 p.m., August 19, 1994.

Pursuant to 5 U.S.C § 8442(b) and its implementing regulation, 5 C.F.R. § 843.309(a) (1994), if a federal employee dies after completing at least 18 months of civilian service, that employee's spouse is entitled to receive the BEDB, as a result of that employee's participation in FERS.[1]

1. Section 8442(b), chapter 5, of the U.S.C., entitled "Rights of a widow or widower," states that, "[i]f an employee or Member dies after completing at least 18 months of civilian service creditable under section 8411 and is survived by a widow or widower, the widow or widower is entitled to ... [a survivor bene-fit]." Section 843.309(a), chapter 5 of the C.F.R., entitled "Federal Employees Retirement System—Death Benefits and Employee Refunds—Current and Former Spouse Benefits," similarly states that "if an employee or Member dies after completing at least 18 months of civilian service creditable under

Clark, Michael's brother, is the executor and conservator of Michael's estate, as well as the guardian of the two children. As executor of Michael's estate, Clark submitted an application to OPM in order to obtain the BEDB to which he claims Michael was entitled as a result of Melonie's participation in FERS.

In a letter dated August 10, 1998, which formalized an initial decision dated June 19, 1998, and subsequently in a final reconsideration decision dated June 16, 1999, OPM denied Clark's application, citing the principle that one who kills his spouse cannot inherit from that spouse. OPM noted in its final decision that "because it is against public policy to permit an individual to profit from his or her own wrongdoing, Mr. Clark's estate's claim for FERS basic employee death benefit as the estate of the widower of Mrs. Melonie G. Clark was disallowed. OPM follows the common law concept that you cannot profit from a crime." Letter from OPM to Clark of 6/16/99, at 2.

Clark appealed OPM's decision to the Board. In an initial decision dated October 14, 1999, the AJ held that pursuant to the Code of Alabama § 43–8–253 (1994) ("Slayer Statute"), one who kills his or her spouse is deemed to have predeceased the decedent. The Slayer Statute provides in relevant part that "[a] final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section. In the absence of a conviction of felonious and intentional killing the court may determine by a preponderance of the evidence whether the killing was felonious and intentional for purposes of this section."

The AJ reasoned that Michael, being deemed to have "died before" Melonie, was never considered a "surviving spouse" and

consequently neither he nor his estate is entitled to the BEDB. In response to Clark's argument that the Slayer Statute does not apply to a determination of eligibility for *federal* benefits, the AJ held that state law is used to determine relevant familial relationships, in particular to determine who may be deemed "the surviving spouse" for purposes of distributing survivor benefits: "Although the death benefit is provided for by statute, questions involving the relationships of individuals such as Michael and Melonie are determined by state law and not Federal law." *Clark,* slip op. at 3.

On March 13, 2000, the full Board denied Clark's petition for review, making the AJ's decision the final decision of the Board. Subsequently, Clark filed a timely petition for review with this court.

### Discussion

The scope of judicial review of decisions of the Board is narrowly limited by statute. Specifically, this court must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation having been followed; or unsupported by substantial evidence. 5 U.S .C. § 7703(c) (1994); *Kewley v. Dep't of Health & Human Servs.,* 153 F.3d 1357, 1361 (Fed.Cir.1998).

OPM is a federal agency charged with the distribution of the BEDB, pursuant to 5 U.S.C. § 8442(b) and 5 C.F.R. § 843.309(a). The statute and its implementing regulation provide in relevant part that if an employee dies after completing at least 18 months of civilian service and is survived by a spouse, that spouse will receive a benefit. However,

Subpart C of Part 842 of this chapter and is survived by a current spouse who meets the requirements of § 843.303, the current

spouse is entitled to the basic employee death benefit ..."

neither the statute nor its implementing regulation explicitly addresses whether a survivor benefit should be given to one who has become a widow or widower by intentionally killing his or her spouse. OPM and the Board thus relied on state law principles to determine whether Michael was deemed to be a "surviving spouse," and hence whether Clark, as the executor of Michael's estate, was entitled to receive the BEDB.

As noted by the Board, we have previously affirmed reliance on state law principles to determine eligibility for federal benefits. *See Clark*, slip op. at 3, *citing Rogers v. Office of Pers. Mgmt.*, 87 F.3d 471, 473 (Fed.Cir.1996) (relying in part on the presumption of validity under Texas *state law* in favor of the latest marriage to determine which of two "wives" was married to the deceased federal employee at the time of his death and thus which "wife" was entitled to his survivor annuity) (emphasis added); *Money v. Office of Pers. Mgmt.*, 811 F.2d 1474, 1479 (Fed.Cir.1987) (affirming the Board's determination that eligibility for federal benefits should be decided based upon which one of two marriages would be recognized as valid by California *state* courts) (emphasis added).

OPM determined that Alabama state law prohibits killers from profiting from their crimes. In *Weaver v. Hollis*, 247 Ala. 57, 22 So.2d 525 (1945), a case cited by OPM, Letter from OPM to Clark of 6/16/99, at 2, the Supreme Court of Alabama held that, "[t]he basic reasons behind the denial of the right of the husband to inherit from the wife whom he has feloniously killed is so compelling, we now declare that in this jurisdiction he cannot do so." *Weaver*, 22 So.2d at 529. We note that *Weaver* in fact predates by decades the Slayer Statute, which was not passed by the Alabama Legislature until 1982.

Alabama's intent to preclude killers from profiting from their crimes is further evidenced through the Slayer Statute. In enacting the Slayer Statute, the Alabama Legislature decided that one who "feloniously and intentionally" kills his or her spouse is deemed to have predeceased the decedent and is thus ineligible to receive "surviving spouse" benefits. *See* Ala.Code § 43–8–253(a). In the opinion affirming OPM's denial of Clark's BEDB application, the Board reasoned that, "the FERS death benefit [BEDB] is a benefit that accrues only to a surviving spouse … [a]nd since the Alabama law provides that Michael should be deemed to have predeceased Melonie, then his estate is not entitled to the benefit." *Clark*, slip op. at 2–3.

However, before applying the principle of Alabama law to deny Clark's BEDB application, OPM first examined the evidence before it to determine whether Michael had intentionally and feloniously caused the death of his wife. OPM reviewed the death certificates from the Deputy Coroner, which stated that Melonie's death had been deemed a "homicide" and Michael's death a "suicide." OPM also submitted a written request to the Talladega County Sheriff's Office to obtain further information regarding the case. In response to its request, OPM received and considered a letter from the County Sheriff's Office, dated June 14, 1999, which detailed the conclusions of the Chief Investigator: "[T]he investigation did reveal that Michael H. Clark did intentionally cause the death of his wife, Melonie Gentry Clark, by shooting her with a firearm, along with other members of her family, and then committed suicide prior to the arrival of law enforcement on the scene." Letter from the Talladega County Sheriff's Office to OPM of 6/14/99.

Based on this evidence from appropriate state authorities, OPM in its final decision concluded that it should follow the principle of Alabama law in the instant

case, and that therefore Michael's intentional killing of Melonie prevented his estate from obtaining the BEDB: "We have a report from the Talladega County Sheriff's Office indicating that Mr. Clark intentionally caused the death of Mrs. Clark by shooting her with a firearm. Based on this information, we found that Mr. Clark and subsequently his estate were not entitled to a basic employee death benefit." Letter from OPM to Clark of 6/16/99, at 1. While neither OPM nor the Board was bound by the conclusions of the state authorities, both reasonably concluded, based on the content of the documents before them, that the principle of Alabama law should be followed to deny Clark's BEDB application. Their conclusions were supported by substantial evidence and were in accordance with law.

We additionally note that this principle of Alabama law is long-standing and widespread. As stated above, the policy that a killer may not profit from his or her crime precedes by decades the Slayer Statute, which was not passed by the Alabama Legislature until 1982. In fact, the Supreme Court recently noted in dictum that the principles underlying state slayer statutes are "well established in the law and ha[ve] a long historical pedigree." *Egelhoff v. Egelhoff*, 532 U.S. 141, ——, 121 S.Ct. 1322, 1330, 149 L.Ed.2d 264 (2001) (*citing Riggs v. Palmer*, 115 N.Y. 506, 22 N.E. 188 (1889)). Similarly, in this court, we have upheld the propriety of this principle in order to prevent one who has intentionally killed a spouse from benefitting from the crime. In *Lofton v. West*, 198 F.3d 846 (Fed.Cir.1999), we stated that the Department of Veterans Affairs ("DVA"), in light of the universality of this principle, acted reasonably in promulgating a regulation which adopted the rule that a "slayer" may not obtain benefits as a result of "intentionally and wrongfully" causing the death of his or her spouse. *Id.* at 850. We reasoned in *Lofton* that "Con-

gress legislates against a common law background, and [the relevant regulation] simply codifies a long-standing common law principle known as the 'slayer's rule,' which bars wrongdoers from obtaining insurance and other benefits as a direct consequence of their wrongful acts." *Id.*

Clark argues to this court that he is entitled to the BEDB because, in the absence of a conviction, the Slayer Statute requires a finding by an Alabama probate court that Michael intentionally killed Melonie. Clark asserts that absent such a finding, the Slayer Statute is inapplicable and consequently he is entitled to the BEDB from OPM. On the other hand, OPM argues that Clark is not entitled to the BEDB because the Code of Alabama does not limit the term "court" in the Slayer Statute to only include an Alabama probate court, and that therefore OPM and the Board can constitute "courts" for purposes of the statute.

■ We disagree with both contentions. The plain language of the Code of Alabama clearly contemplates that, absent a conviction, determinations of intentional killings for purposes of the Slayer Statute will be made by an Alabama "court." *See* Ala.Code § 43–8–253(e). However, merely because the Slayer Statute is technically inapplicable to the instant case does not preclude OPM, nor the Board, from relying on the state law principle behind the statute. As stated above, the Slayer Statute codified a long-standing Alabama state principle, which is also found in virtually all other states, *see Egelhoff*, 532 U.S. at ——, 121 S.Ct. at 1330, as well as in federal common law. *See Lofton*, 198 F.3d at 850. If there had been a conviction or an Alabama court finding, OPM would have been required to apply the Slayer Statute. However, the absence of a conviction and of a probate court finding did not necessarily preclude OPM from lawful-

ly relying on the Slayer Statute's underlying principles.

 We certainly do not hold that it is always appropriate for OPM to rely on state law to deny an individual federal benefits. In some instances, the federal statute might contain an explicit provision which contradicts a state principle, in which case OPM would not be able to rely on such principle. Nor do we hold that OPM was required to accept the state authorities' conclusions that Michael had intentionally killed his wife. Rather, we hold only that because the federal statute in question was silent on the subject of killers obtaining the BEDB earned by their victims, OPM was entitled to look to Alabama state law to determine that the estate of a "slayer" may not obtain "surviving spouse" benefits. Furthermore, because there was substantial evidence that Michael did indeed intentionally cause the death of his wife, we hold that OPM lawfully concluded that the principle of Alabama's "slayer's rule" applied to the instant case, and consequently OPM correctly denied Clark's BEDB application.

 Furthermore, we note that in regard to the instant case, federal common law is in accordance with the state law principle. *See Lofton,* 198 F.3d at 850; *Mutual Life Insurance Co. v. Armstrong,* 117 U.S. 591, 6 S.Ct. 877, 881, 29 L.Ed. 997 (1886). Thus, Clark would still not be entitled to the BEDB even had the Board relied on federal common law. Consequently, we do not reach the hypothetical, and unlikely, question of whether, if a state court should rule in the future that slayers may obtain benefits from their victims, OPM may rely on such a state law principle that contradicts federal common law. *See Egelhoff,* —— U.S. at ——, 121 S.Ct. at 1330 (stating in dictum that "the principles underlying the [slayer] statutes ... have been adopted by nearly every State").

## Conclusion

Based on substantial evidence from Alabama state authorities that Michael intentionally killed Melonie, OPM reasonably relied on the principle of Alabama law in order to deny Clark's BEDB application. Thus, the Board's approval of OPM's reliance on Alabama law, and its decision affirming OPM's ruling, was based on substantial evidence and was in accordance with law. Accordingly, the Board's decision is

*AFFIRMED.*