# United States Court of Appeals for the Federal Circuit

---

**STEPHANIE D. BYRUM,**
*Petitioner,*

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent.*

---

2009-3264

---

Petition for review of the Merit Systems Protection Board in DA0843080294-I-2.

---

Decided: September 9, 2010

---

SCOTT E. STEVENS, Stevens Love, of Longview, Texas, argued for petitioner.

DANIEL RABINOWITZ, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, BRIAN M. SIMKIN, Assistant Director, and MICHAEL N. O'CONNELL, Trial Attorney.

---

Before GAJARSA, MAYER, and PLAGER, *Circuit Judges.*

PLAGER, *Circuit Judge.*

This case involves determining the rightful claimant to certain death benefits attributable to the service of a deceased federal employee. The employee's spouse, who ordinarily would be entitled to the benefits, has been held civilly responsible for the employee's death. Ordered in the civil action to assign the benefits to Stephanie Byrum, daughter of the deceased employee and petitioner in this appeal, the employee's spouse subsequently executed the ordered assignment. Petitioner Byrum made claim to the death benefits.

The Office of Personnel Management ("OPM") denied her claim on the ground that Ms. Byrum, the daughter of the deceased federal employee, was not also the spouse of the deceased, and since she was not, she could not claim the benefits. The Merit Systems Protection Board ("MSPB" or "Board") affirmed OPM's decision, specifically limiting its decision to the conclusion that Stephanie Byrum was not her mother's spouse. The Department of Justice, representing the Government in this appeal, agrees with both OPM and the Board that Ms. Byrum was not her mother's spouse, or at least the Board did not err in so concluding.

This appeal presents us with the question of whether the Board correctly decided the case before it. Those uninitiated in the ways of government might suppose a conclusion regarding whether a daughter was or was not also her mother's spouse, even on these scant facts, to be somewhat strange, and might even suppose that a correct conclusion regarding that proposition is sufficiently self-evident not to have required two years of administrative consideration. One might even think there must have

been something else at issue.  In fact, there was.  It falls to us to explain to the Justice Department, the MSPB, and OPM why it is now necessary, after all the administrative proceedings that preceded, for this court to vacate and remand the matter so OPM can start over, addressing the issues Ms. Byrum's claim actually presented.

BACKGROUND

A.

Rebecca Moulton in 2004 met an untimely death.  At the time of her death, Mrs. Moulton had been employed by the United States Postal Service ("USPS" or "agency") for almost eighteen years and had been married to David Len Moulton for almost seventeen years.  Also surviving her was a daughter, Stephanie Moulton, now known as Stephanie Byrum.

Ms. Byrum was appointed Administrator of her mother's estate, and set about the process of identifying the assets of the estate, including both insurance and death benefits accruing from her mother's employment. Among the death benefits the Government provides for its employees under the Federal Employees Retirement System ("FERS") are the two at issue in this case: (1) a lump sum payment for the employee's widow or widower in an amount based on a percentage of the employee's rate of pay, 5 U.S.C. § 8442(b)(1)(A),[1] and (2) if the employee completed at least ten years of service, an annuity for the surviving spouse equal to fifty percent of the basic retirement annuity that would be computed for the employee based on her pay and years of service, 5 U.S.C.

---

[1]    The lump sum can be taken in monthly installments over a period of three years.  5 U.S.C. § 8442(b)(2).

§ 8442(b)(1)(B).    Rebecca Moulton's years of service earned both of these benefits, payable to a surviving spouse if there be one, which in this case there was.

Not long after Rebecca Moulton's death, David Moulton, her surviving spouse, applied for these death benefits.  OPM has yet to issue a decision on his application.  As will be seen, the question of to whom these benefits are now to be paid is the central issue in this case.

Upon learning more about how her mother met her demise,[2] Ms. Byrum, individually and as Administrator of her mother's estate, and joined by other family members, brought a civil suit in a Texas state court against her mother's husband, David Moulton, for wrongfully causing his wife's death.  A jury found Mr. Moulton liable, and judgment was rendered in April 2006 awarding plaintiffs several million dollars in compensatory and exemplary damages.  The judgment included an order commanding David Moulton "to desist and refrain from making any application for monetary benefits relating in any manner to the death of Rebecca Moulton in perpetuity," and ordering him to deposit any such funds he has or may receive into the registry of the court.  J.A. 5.

A further order was issued by the Texas court in July 2006, granting what was denominated "Turnover Relief." In that order the court referenced both the "Death benefits available through the Federal Employees Retirement System," referring to the two statutory benefits described above, as well as "Life Insurance, administered by the

---

[2]    For a detailed account of the circumstances surrounding Rebecca Moulton's death, which led to both the civil action and the subsequent criminal proceeding against David Moulton, see John Council, *Patent Lawyer Turned Prosecutor*, Tex. Law., Apr. 5, 2010, at 1.

Federal Employees Group Life Insurance Program." The order directed Moulton "to execute such forms that are necessary to consummate the assignment of his right, title and interest, if any, of the above-referenced benefits to Plaintiffs." J.A. 8.

Later that same month, Ms. Byrum's attorney sent a letter to USPS, the agency for which the mother had worked. The letter was accompanied by completed claim forms for death benefits under the Federal Employees' Group Life Insurance Program ("FEGLI") and death benefits under FERS, the latter being the benefits at issue in this case.[3] In the letter the attorney explained the circumstances of the mother's death and the subsequent civil suit. He enclosed copies of the Texas court's judgment and order for turnover relief and explained that the order made clear that, to the extent David Moulton had any claim to the various death benefits, he had been ordered to assign them as set out in the order. The letter stated that, "Accordingly, we are proceeding with making formal claim for all such benefits." J.A. 1.

In the letter, the attorney then requested the agency to send him the paperwork necessary to complete such an assignment. In the alternative, the attorney offered to prepare an assignment form, have it executed by Mr. Moulton, and then forward it to the agency. The letter concluded: "[T]o the extent that assignments or disclaimers are required from Mr. Moulton for any other benefits, then please notify me of the same, and I will have those forms completed." J.A. 2.

---

[3]    The FERS and FEGLI claim forms instruct an applicant to send completed forms to the employing agency, rather than OPM or the Office of FEGLI, if the deceased was employed at the time of death.

The completed forms sent with the letter indicated that the deceased person's spouse at the time of death was David Len Moulton, and that Stephanie Moulton (i.e., Byrum), the applicant, was the Administrator of the employee's estate; copies of the court-issued Letter of Administration were enclosed. On Form 3104—Application for Death Benefits under FERS—question 5 of Section B reads "I am applying for benefits as (check all boxes that apply)." J.A. 34. Ms. Byrum checked "Child," but failed to check "Executor or administrator of estate." She also could have checked "Other" and explained that she was claiming benefits as the assignee of David Moulton's rights. This incomplete answer may have introduced some confusion as to whether Ms. Byrum's claim for benefits was simply one from a misinformed child of the deceased, or was one from a legitimate claimant under a court-ordered assignment pursuant to state law. Nevertheless, the explicit explanation of the matter contained in the attorney's cover letter should have been sufficient to notify OPM that Ms. Byrum was claiming the death benefits that Mr. Moulton had been ordered by the Texas court to assign to her.

Not long afterward, in September 2006, Ms. Byrum's attorney sent a similar letter to the Office of FEGLI ("OFEGLI") intending to claim the mother's life insurance benefits. Again the claim was based on the court-ordered assignment theory. Among other documents, the letter enclosed copies of the completed claim forms for FEGLI death benefits and for FERS death benefits. At some point during the ensuing months, OFEGLI paid the claimed life insurance benefits to Ms. Byrum.

After receiving no response regarding the claim for FERS death benefits, Ms. Byrum's attorney wrote in January 2007 directly to the OPM office that handles

FERS claims.  In the letter, the attorney stated that his office had "forwarded all necessary claim forms for benefits due and payable as a result of the untimely death of Rebecca Diane Moulton."  He explained once again that the Texas court had ordered David Moulton to assign all death benefits to Ms. Byrum.  He enclosed a copy of the court's July 2006 turnover order and two documents that he had not previously sent: a completed disclaimer and assignment form, signed by David Moulton, and a copy of the completed application for death benefits that David Moulton had submitted originally to OPM in 2005.

At this point the attorney, presumably inadvertently, introduced into the matter a second potential area of misunderstanding, not about who was claiming the benefits and why, but about exactly what benefits were being claimed.  His letter stated, "With the exception of the Basic Employee Death Benefit (BEDB), we have collected all benefits.  I write to demand payment of the Basic Employee Death Benefit due and payable to Stephanie Byrum."  The term "Basic Employee Death Benefit" is used in OPM regulations to refer to the lump sum benefit payable to a surviving spouse under 5 U.S.C. § 8442(b)(1)(A).  As will be discussed in more detail below, however, the record is clear that Ms. Byrum was claiming all death benefits attributable to her mother's federal service, including all available FERS death benefits, which the Texas court ordered Mr. Moulton to assign to Ms. Byrum.

B.

OPM issued its initial decision on Ms. Byrum's claim for FERS death benefits in February 2007.  It stated:

> [Y]ou are not eligible for payment of the Basic Employee Death Benefit (BEDB) from the Federal Employees Retirement System as a result of the death of Rebecca D. Moulton.
>
> The BEDB is a lump sum death benefit that is payable **only** to a surviving spouse or former spouse of a deceased employee. Since David L Moulton was responsible for causing the death of Rebecca D Moulton, he is not entitled to any death benefits from the Federal Employees Retirement System. This benefit is not payable to you as the child of the deceased.

J.A. 57 (emphasis in original). The decision made no reference to Ms. Byrum's claim of entitlement to FERS death benefits by assignment from Mr. Moulton.

Ms. Byrum sought reconsideration of OPM's decision in a letter sent the following month by her attorney. He noted that OPM's position regarding FERS death benefits was in direct conflict with OFEGLI's position regarding Rebecca Moulton's life insurance benefits, which, upon a showing of the court orders and assignment signed by David Moulton, were turned over to Ms. Byrum. With regard to eligibility for death benefits, the attorney stated that, under *Clark v. Office of Personnel Management*, 256 F.3d 1360 (Fed. Cir. 2001), courts will look to the law of the state. According to his reading of Texas law on forfeiture of life insurance proceeds, which he contended should also apply to the death benefits at issue here, the attorney concluded that Mr. Moulton was entitled to claim the benefits because there had been no criminal conviction and no finding of an "intent to kill and an element of

illegality" in the civil case. J.A. 58 (citation omitted). Consequently, he argued, Mr. Moulton's assignment to Ms. Byrum of his right to the death benefits rendered her the legal claimant.

Almost a year later, OPM issued its reconsideration decision. In it, OPM acknowledged that the law that applies to Ms. Byrum's request for benefits includes subsections (A) and (B) of 5 U.S.C. § 8442(b)(1), which provide for the lump sum payment and the survivor annuity, respectively. After noting that life insurance proceeds administered by OPM under the FEGLI are assignable, the decision simply ended with the conclusory statement that "the FERS law and regulation provide for payment of [death benefits] to eligible spouses of an employee . . . . [Y]ou are not eligible for [death benefits] because you are not the widower of the deceased." J.A. 93.

Ms. Byrum next appealed OPM's reconsideration decision to the Board. The administrative judge ("AJ") to whom the case was assigned initially recognized that in the case as presented there were a number of unresolved issues, including the basic question of who was eligible to receive the death benefits, and whether David Moulton was a necessary party entitled to be heard in the case. Initially, in order to allow Mr. Moulton an opportunity to intervene, the AJ dismissed the appeal. Mr. Moulton did not intervene, and the appeal was reopened.

In March 2009, the AJ issued his Initial Decision, which became the final decision of the MSPB when the Board denied Ms. Byrum's petition for review. The decision acknowledged that OPM had failed to address several issues: whether Ms. Byrum was entitled to the death benefits in the event David Moulton was precluded by law

from claiming them for himself; whether Ms. Byrum was entitled to receive the death benefits "derived from the interests of" David Moulton; and the status of unrefunded retirement contributions that ordinarily are to be paid as a lump sum according to a statutory order of precedence if no survivor is eligible for an annuity, *see* 5 U.S.C. § 8424(d),(e). *Byrum v. Office of Pers. Mgmt.*, No. DA-0843-08-0294-I-2, slip op. at 4 n.4 (M.S.P.B. Mar. 5, 2009).

The AJ did recognize that the Board could take jurisdiction over an appeal if an agency's failure to issue a decision "'could effectively prevent an appellant from obtaining an adjudication of his claim.'" *Id.* (quoting Board precedents). Nevertheless, the AJ concluded that, since OPM had only decided the narrow issue of whether Ms. Byrum was indeed not her mother's spouse, the Board's decision on appeal would be equally limited. The AJ found that "OPM's reasoning on this limited point [was] correct and must be affirmed." This concluded the process of administrative adjudication of Ms. Byrum's claim for the death benefits attributable to her mother's eighteen years of federal service.

Ms. Byrum turned to the courts, and appealed here. We have jurisdiction under 28 U.S.C. § 1295(a)(9). Attorneys from the Department of Justice now represent OPM. Given a choice between returning the matter to the Board or OPM for further consideration of the unaddressed issues, or mounting a vigorous defense of the puzzling decisions of OPM and the Board, the Department has chosen the latter.

DISCUSSION

A.

As an initial matter, we address a potential area of confusion regarding which benefits Ms. Byrum is claiming. As noted, Ms. Byrum's attorney used the phrase "Basic Employee Death Benefit" and its acronym, "BEDB," in some of his correspondence. That term does not appear in 5 U.S.C. § 8442, the statute that provides the two FERS death benefits previously described—the lump sum benefit of subsection (b)(1)(A) and the survivor annuity of subsection (b)(1)(B). The phrase "basic employee death benefit" is introduced in an OPM regulation, 5 C.F.R. § 843.309, to describe the lump sum payment provided under subsection (A) of the statute. Another regulation, § 839.102, defines "Basic Employee Death Benefit or BEDB" as "the FERS survivor benefit payable as a lump sum or over 36 months, described in § 843.309."

This case began with the Texas court ordering David Moulton to assign to plaintiffs in the civil case all monetary benefits that he could claim based on Rebecca Moulton's federal employment. The court orders did not use either the phrase "Basic Employee Death Benefit" or the "BEDB" acronym, but referred to FERS "death benefits" in the plural. The July 2006 letter from Ms. Byrum's attorney initiating her claims clearly stated that what she was seeking was "the various benefits" available from the Government as a result of an employee's death, including all benefits to which Mr. Moulton had any claim, which by court order were to be assigned to Ms. Byrum.

Then in his January 2007 letter, Ms. Byrum's attorney referred to her claim as one for the "Basic Employee Death Benefit (BEDB)" or the "BEDB." These terms

continued to be used indiscriminately by both the attorney and OPM (and later by the MSPB and the lawyers before this court), appearing at times to have been used to describe all the benefits available, and at other times to describe something less. For example, in its reconsideration letter of February 2008, OPM specifically cited both subsections (A) and (B) of § 8442(b)(1) as being the law that applied to Ms. Byrum's claim. However, by making reference to "the BEDB," OPM left unclear whether its ruling on the claim was intended to be limited to the subsection (A) lump sum benefit, leaving the subsection (B) annuity issue undecided, or whether its ruling also applied to the subsection (B) annuity.

Unfortunately, in the appeal to this court the parties carried forward the confusion, frequently using the BEDB acronym to refer either to both benefits or to the specific subsection (A) benefit. Confusion was compounded when, at oral argument, Ms. Byrum's counsel, responding to a question from the court, indicated that he understood the benefits at issue to be the lump sum benefit of subsection (A), a response that he promptly withdrew in a post-argument submission to the court in which he stated that he was confused by the question and reiterated that Ms. Byrum was seeking all benefits available, including both the lump sum award of subsection (A) and the survivor annuity of subsection (B).

It seems safe to assume that an agency that administers a government program, particularly those as complex as the programs administered by OPM, brings to it a level of expertise not necessarily shared by the general public. If OPM itself has had difficulty sorting through the claim involved in this case under the laws it administers, it is perhaps even more understandable that others who do not regularly practice federal benefits law would have

difficulty with the terms and phrases sprinkled through that law. There is no doubt that the intent of the state court that issued the orders, of David Moulton in assigning his rights pursuant to those orders, and of Ms. Byrum in claiming the benefits that the court ordered Mr. Moulton to assign to her, was to obtain all the death benefits that the law provided as a consequence of her mother's government service, including both the subsection (A) and subsection (B) benefits. Accordingly, to avoid any question arising in this regard on remand, for purposes of law of the case we hold that the petitioner is seeking all available death benefits attributable to her mother's service, and specifically including both the lump sum and the annuity provided under § 8442(b). We further hold that, pursuant to the Texas court's turnover order, David Moulton assigned to Ms. Byrum all available death benefits to which he may have had a claim under FERS, including both the lump sum and the annuity in § 8442(b). That much we can lay to rest in this case.

## B.

We turn now to the Board's decision that is before us for review. The only question expressly decided by OPM and the Board was that Ms. Byrum was not her mother's spouse, and therefore was not entitled to claim FERS death benefits as her mother's spouse. On appeal, the Government does not even address this issue, apparently acknowledging that it is irrelevant to the claim actually made by Ms. Byrum—that she was entitled to FERS death benefits *as the court-designated assignee* of her mother's spouse. Instead, the Government urges affirmance of the Board's decision on several alternative grounds.

The first point made by the Government relates to the status of David Moulton. At the time its brief was filed, the Government suggested that since Mr. Moulton had been indicted for murder and was soon to be tried, the court might wish to defer its decision pending the outcome of the trial. In the Government's view, a murder conviction "would be dispositive of this case." Appellee's Br. 9. The court has since been advised that David Moulton has been convicted of the murder of Rebecca Moulton and is serving a long prison sentence.

Is Mr. Moulton's conviction dispositive? That depends. Does state law determine whether a murder conviction works a forfeiture of federal benefits, *see Clark*, 256 F.3d at 1365 (applying Alabama law), or is there some kind of federal common law rule specifically for this circumstance, as the Government here argues? If state law applies, what is the law of Texas—is there no forfeiture until conviction, as Ms. Byrum's attorney posited in his request for reconsideration of OPM's initial decision? If so, since the assignment to Ms. Byrum was executed before conviction, would the assignment be valid under Texas law, or would the conviction relate back to the date of assignment?

Even assuming the conviction worked a forfeiture of any claims that David Moulton might have that accrued from his deceased wife's employment, would that forfeiture apply to the estate of Rebecca Moulton and to her daughter, who was not a party to the crime? Would such a forfeiture inure to the benefit of the Government, i.e., would the Government get to keep the money earned through Rebecca Moulton's many years of service, or are

the benefits payable in some form to her estate and her legitimate survivors?[4]

These are all interesting questions raised by Ms. Byrum's claim for benefits, none of which were addressed by OPM or by the Board in their decisions. What law and facts underlie these questions are beyond the record of decision presented by the Government, and thus not before this court. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (holding that a reviewing court must judge a decision of an administrative agency "solely by the grounds invoked by the agency"). We decline the Government's invitation to offer an advisory opinion on such matters, especially when they were never decided by any authority below and have not been satisfactorily briefed by the parties.

A second argument raised by the Government in support of the decision below is that neither a lump sum payment nor an annuity payable under § 8442(b) is assignable as a matter of federal law. In support, the Government cites 5 U.S.C. § 8470(a), which provides that many benefits, including those at issue here, are not assignable except under certain exceptions. One exception provides: "An individual entitled to an annuity payable from [FERS] may make allotments or assignments of amounts from the annuity for such purposes as [OPM] considers appropriate." 5 U.S.C. § 8465(b). As the Gov-

---

[4]    The AJ's opinion suggests that even if no survivor annuity is paid, Ms. Byrum may be entitled to a different lump sum benefit based on the unrefunded amount of her mother's retirement deductions during her employment. *See* 5 U.S.C. § 8424(d),(e).

ernment acknowledges, this raises the question of whether an assignment of an annuity to Ms. Byrum would be considered by OPM to be "appropriate," and also the question of whether the subsection (A) benefit, the "BEDB," is an annuity for purposes of this statute.

On the "appropriateness" of an assignment, the Government concedes that OPM has not issued regulations that state what assignments under what circumstances would be considered appropriate pursuant to § 8465(b). Instead, the Government advises that "OPM states that its practice when it receives a request to assign a FERS annuity has been to apply the corresponding regulations issued for a similar statutory provision in the Civil Service Retirement System ('CSRS'), which does not recognize assignments to individuals." Appellee's Br. 11-12. The Government then cites a CSRS regulation, 5 C.F.R. § 831.1511, which permits "allotments" from annuity payments to labor, employment, and similar organizations, and concludes that CSRS does not recognize assignments to individuals.

For argument sake we will make the rather large leap that a regulation limiting "allotments" could be understood to limit assignments, and that a regulation precluding the assignment of benefits to individuals but permitting assignment to favored organizations could survive due process scrutiny. Even so, we find it interesting that the Government believes our decision in the case should be based on an undisclosed source in OPM stating that an unwritten practice of using regulations that do not apply to the program at issue would bar an employee from making an otherwise lawful assignment. Be that as it may, the issue of the assignability of Mr. Moulton's interests in these benefits was never decided by either OPM or the MSPB; as in the case of the forfeiture ques-

tion, we decline to decide a question not a part of the decision being reviewed on appeal.

In its final argument, the Government disputes that these issues were not a part of the decisions being appealed. According to the Government, we should consider them to have been decided by OPM and the Board. First the Government suggests that the court could be creative and add a few words to OPM's reconsideration decision. Where the agency noted that the regulations permit assignment of life insurance benefits, we are invited to add language omitted by OPM to the effect that the regulations for FERS death benefits contain no similar provision, and hence by implication an assignment of FERS benefits would be prohibited.

With regard to the subsequently-issued Board decision, which is the decision actually before us for review, the Government says that the AJ may not have fully understood OPM's position when he recited the numerous issues not addressed by OPM in its reconsideration decision. Apparently the Government's view is that OPM's position has always been that the FERS death benefits at issue are not assignable, notwithstanding OPM's failure to address the assignability question in its decisions. None of this, says the Government, need hinder this court from addressing the underlying issues presented by Ms. Byrum's claim. However, we will not invent administrative decisions that were not issued by the responsible administrative authority.

As discussed, the correspondence from Ms. Byrum's attorney to OPM makes it clear that Ms. Byrum is claiming the death benefits at issue based not on Ms. Byrum's relationship to her mother, but on her status as the court-designated assignee of her mother's spouse, who on the

face of it was otherwise entitled to the benefits. In order for that application for benefits to be decided properly, several factual and legal questions regarding David Moulton's entitlement to the benefits and the assignability of those benefits pursuant to the court orders in this case must be addressed. Neither OPM nor the Board has addressed the relevant issues, and we will not affirm the Board's decision on grounds not relied on by the Board itself. *See Chenery*, 332 U.S. at 196.

By not deciding the claim for benefits as submitted, OPM failed to carry out its statutory duty to Ms. Byrum and her deceased mother, a long-time federal employee.[5] The Board compounded the problem by affirming OPM's reconsideration decision on narrow grounds and declining to address the issues raised by Ms. Byrum. The AJ supported his decision by citing the Board's general rule that it lacks jurisdiction over a matter in which OPM has not issued a reconsideration decision. But under an exception to the Board's rule, also cited by the AJ, the Board has jurisdiction to consider a matter not addressed by OPM if the Board's failure to do so "could effectively prevent an appellant from obtaining an adjudication of his claim." *McLaughlin v. Office of Pers. Mgmt.*, 62 M.S.P.R. 536, 546-47 (1994), *aff'd*, 47 F.3d 1181 (Fed. Cir. 1995) (Table). Since there is little doubt that Ms. Byrum has been prevented from obtaining an adjudication of her claim, the Board's decision to affirm OPM's reconsideration decision without addressing the issues actually

---

[5] *See* 5 U.S.C. § 1103(a)(5) (charging the Director of OPM with "executing, administering, and enforcing—(A) the civil service rules and regulations of the President and the Office and the laws governing the civil service; and (B) the other activities of the Office including retirement and classification activities").

presented by Ms. Byrum's claim was arbitrary, capricious, and not in accordance with law.  *See* 5 U.S.C. § 7703(c).

It might be suggested that we are making a federal case out of an unfortunate incident, and that the hurdles to be overcome by Ms. Byrum in her search for these benefits are so great that it is a waste of time and energy for us to require that it be pursued further.  In the end Ms. Byrum's effort may prove futile, but then again it may not.  That is not the point.  The point is whether Ms. Byrum was given a fair opportunity to make her case, and have it decided according to law.  Regrettably, the Government has thus far chosen to deny Rebecca Moulton in death the benefits she paid for during her life of federal service, without a fair hearing on the real issues in the case.  The Justice Department's defense of OPM's decision and of the Board's affirmance is simply inexplicable.  It is not the duty of the Justice Department simply to try to win cases for the Government; as President Lincoln famously said, "It is as much the duty of Government to render prompt justice against itself, in favor of citizens, as it is to administer the same, between private individuals."[6]

## CONCLUSION

For the reasons explained, the decision of the Board is vacated and the matter is remanded to the Board; the Board is to return the matter to OPM with instructions to give Ms. Byrum a full and complete review and decision of the claim made, including all issues related thereto.  If the matter is thereafter appealed to the Board, the Board's review shall be as broad and complete as neces-

---

[6]    First Annual Message to Congress (Dec. 3, 1861).  This quotation is engraved at the entrance to our courthouse.

sary to address all of the issues brought to it by the petitioner.

## VACATED AND REMANDED WITH INSTRUCTIONS

### COSTS

Costs to Petitioner.