22 So.2d 525

## WEAVER v. HOLLIS et al.
### 6 Div. 277.

Supreme Court of Alabama.
June 7, 1945.

Chas. W. Greer and George Rogers, both of Birmingham, for appellees.

Beddow, Ray & Jones, of Birmingham, for appellant.

58

**LIVINGSTON, Justice.**

On May 21, 1943, Comer Weaver, the appellant, was convicted of murder in the second degree for killing his wife, Margaret Walker Weaver. He was sentenced to serve a term of fifty years in the State penitentiary, and is now serving that sentence. Margaret Walker Weaver left surviving her the appellant, her husband, and one brother, Richard Herron Walker. She died intestate, and at her death had a separate estate consisting of real estate and personal property.

The sole question presented is whether the husband, who feloniously killed his wife, can share in the estate owned by her at the time of her death. The trial court ruled that he could not, and from that decree this appeal is prosecuted.

The question is one of first impression in this jurisdiction, and the decisions of courts of other jurisdictions are in conflict.

Section 12, Title 16, Code of 1940, provides: "If a married woman having a separate estate die intestate, leaving a husband living, he is entitled to one-half of the personalty of such separate estate absolutely; and to the use of the realty during his life."

It is of course apparent that the foregoing statute contains no expressed exception, and we find no other legislative enactment limiting it.

The diversity of opinion on the question here presented is aptly stated in 16 Am.Jur. pp. 847–849, sections 75 and 76, as follows:

"The majority of courts hold that the right of one to take under a statute of descent and distribution is not prevented by the fact that he feloniously killed the ancestor, where the statute contains no provision that he shall not take in such an event. These cases are declaratory of a construction of the statute of descent and distribution and not of any common law or civil law rule. On the contrary, they have enunciated the rule as a statutory rule not to be overridden by any contrary rule of the civil or common law or by any judicial conception of a contrary public policy. With much force, it has been pointed out that some leading cases which take a seeming contrary view are based on wills and contracts, and not on mere statutory rights, and may be harmonized with the majority view, or their language may be disregarded as dictum.

"Some of these cases have regarded a denial of such right as a forfeiture for conviction of crime forbidden by a constitutional provision against corruption of blood and forfeiture of estate for conviction of crime, but in none of them was the constitutionality of a statute providing for such a denial in question; and, as observed subsequently herein, such statutes have been held constitutional. * * *"

Sec. 76. "A minority of courts hold that notwithstanding there is no express statutory provision denying to one who killed his ancestor the right to inherit from him, he is not entitled to so inherit. Some of these cases have based such denial on a 'reasonable interpretation' of the statute to the ef-

fect that in view of the common law maxim and civil law rule and public policy against such a right and by force of the rule that statutes in derogation of the common law will be strictly construed, an intention to deny it is to be read into such a statute.

"Such a construction of the statute violates no constitutional provision. This view, it has been said, does not inflict on the offender any greater or other punishment for his crime than the law specifies. It take from him no property, but simply holds that he shall not acquire property by his crime and thus be rewarded for its commission."

The cases cited to support the foregoing text are cases involving wills, insurance contracts and statutes of descent and distribution. There are many phases of the general problems, and we will not attempt an analysis of the cases.

Appellant earnestly insists that to deny him the right to participate in the distribution of his wife's estate, in accordance with section 12, Title 16, Code, is to disregard the plain, unambiguous language of the statute, and would violate sections 7 and 19, Article 1 of the Constitution of Alabama, which sections are as follows:

Sec. 7. "That no person shall be accused or arrested, or detained, except in cases ascertained by law, and according to the form which the same has prescribed; and no person shall be punished but by virtue of a law established and promulgated prior to the offense and legally applied."

Sec. 19. "That no person shall be attainted of treason by the legislature; and no conviction shall work corruption of blood or forfeiture of estate."

A reasonable interpretation of section 12, Title 16, Code, in the light of the common-law principle that no person can take advantage of his own wrong; that the law permits no one to profit by his own crime, precludes a felonious killer from taking from his murdered spouse.

In the following recent cases, and in the absence of an express statutory prohibition, one who, while sane, kills his or her spouse, has been held to be barred from sharing in the decedent's estate. Price v. Hitaffer, 164 Md. 505, 165 A. 470; Bierbrauer v. Moran, 244 App.Div. 87, 279 N.Y.S. 176; In re Sparks' Estate, 172 Misc. 642, 15 N.Y.S.2d 926; De Zotell v. Mutual Life Ins. Co., 60 S.D. 532, 245 N.W. 58; Re Pitts, 1 Ch. (Eng.) 546, and Re Cash, 30 N.Z.L.R. 577.

And in 139 A.L.R. 502, it is said: "It is to be noted in this connection that in practically all the more recent decisions upon the right of a surviving spouse to inherit the property of the murdered spouse, the right has been held to be barred, even in the absence of an express statutory provision to that effect."

In the recent case of De Zotell v. Mutual Life .Ins. Co., supra, the Supreme Court of South Dakota said:

"We have devoted no inconsiderable time to a careful examination of the conflicting authorities. The matter has been much argued in the reports, and we have hereinbefore cited all the cases dealing with it or the notes where such cases are collected so far as we have been able to find them. In those cases the divergent views on the point are fully exemplified. We cannot hope by anything we might be able to say in this opinion to make any original or valuable contribution to the controversial literature of the topic. We therefore content ourselves with the statement that in our opinion the sounder reason supports the view of the English and Canadian cases and those American decisions which, while slightly in the numerical minority at present, seem to be displaying a tendency toward becoming the majority view and which hold that the heir in such cases is barred from taking. We think that the principle of sound public policy which demands that a sane, felonious killer should not profit by his crime should be applied as often as and whenever any claim is made by such killer, whether under contract, will or statute. The decisions which we prefer to follow attain the result which everyone (and even the cases holding the contrary) admits ought to be attained if possible. We cannot accept as well grounded the argument that such decisions amount to unwarranted judicial interference with legislative action. To discuss the point further or to quote from the opinions would not be profitable. * * *

"We cannot persuade ourselves that there was ever any legislative intent that our statutes of descent and succession, general or special, however broad and unambiguous and lacking in exceptions in their terms, should operate in favor of a sane, felonious killer. We announce it as the law of this state that such statutes will not be permitted so to operate unless and until the Legislature shall specifically and affirmatively so enact."

We also quote the following from the case of Price v. Hitaffer, supra [164 Md. 505, 165 A. 471]:

"We next approach the question of whether or not section 127 of article 93 of the Code, which prescribes the persons entitled to distribution where a childless wife dies intestate leaving a surviving husband, compels such interpretation as would distribute the portion of the estate therein described to the husband who had murdered his wife. It is argued that, it being once ascertained that the wife died intestate, without children or descendants surviving her, and leaving surviving her husband, we must give effect to the words of the statute and award one-half of the estate to the husband, no matter how abhorrent to the principles of equity and morality as understood and practiced by the average citizen and almost universally applied by the Christian nations of the world. It is further argued that the enactment by the Legislature of our statutes of descent and distribution was a legislative declaration of the public policy of this state, overriding a contrary public policy embodied in the common law and as a result of ages of wisdom, morality, and good conscience. * * * 'A construction fraught with consequences so pernicious, as well as dangerous to the order and good government of a great city, must be rejected, unless the plain, imperative words of the act of assembly are open to no other meaning at all.' * * *

"Applying the tests suggested in the above opinion to the present case, we would have now present the members of the Legislature which adopted our statute of descent and distribution, and there would be propounded to them the question: Did you intend to comprehend within the wording of the statute which you passed the case of a husband who murdered his wife, and therefore came within the literal letter of the statute? It is beyond belief that the answer would be in the affirmative. Neither is it conceivable that one be permitted by murder to acquire property through that act, which without the perpetration of the crime he might never come into possession of. If he had induced the delivery of it to him by fraud, undue influence, or coercion, no one would deny that the application of the equitable maxims of the common law would and should prevent him from thus enriching himself. And yet we are here asked to adopt an interpretation of the statute which would enable him, by murder, to enjoy the fruits of his crime, which would be denied him if found to have perpetrated a fraud."

See, also, Riggs v. Palmer, 115 N.Y. 506, 22 N.E. 188, 5 L.R.A. 340, 12 Am.St.Rep. 819; In re Sparks, supra; Bierbrauer v. Moran, supra; Carmols v. Bankers Trust Co. et al., 251 Mich. 420, 232 N.W. 239; Slocum v. Metropolitan Life Ins. Co., 245 Mass. 565, 139 N.E. 816, 27 A.L.R. 1517; Perry v. Strawbridge, 209 Mo. 621, 108 S.W. 641, 16 L.R.A.,N.S., 244, 123 Am.St. Rep. 510, 14 Ann.Cas. 92; Eisenhardt et al. v. Seigel, 343 Mo. 22, 119 S.W.2d 810.

Alabama is a common-law state,— section 3, Title 1, Code of 1940. The common law is the base upon which all of the laws of this State have been constructed, and when our courts are called upon to construe a statute,—when they are called upon to ascertain and declare the legal effect and meaning of a legislative enactment,—they must read the statute in the light of the common law. Cloverdale Homes v. Town of Cloverdale, 182 Ala. 419, 62 So. 712, 47 L.R.A.,N.S., 607. "The presumption is that the legislature does not intend to make any alteration in the law beyond what it explicitly declares, either in express terms or by unmistakable implication, and that it does not intend to overthrow fundamental principles, infringe rights, or depart from a general system of law without expressing its intention with irresistible clearness." Duncan v. Rudulph, 245 Ala. 175, 16 So.2d 313, 314.

This Court has held that a beneficiary in a life insurance policy, who murders or feloniously causes the death of the insured forfeits all rights which he may have in or under the policy. Sovereign Camp, W. O. W. v. Gunn, 227 Ala. 400, 150 So. 491; Protective Life Ins. Co. v. Linson, 245 Ala. 493, 17 So.2d 761; American Life Ins. Co. v. Anderson, 246 Ala. 588, 21 So.2d 791.

In Protective Life Ins. Co. v. Linson, supra, it was said:

" 'It is a well-settled rule that a beneficiary in a life insurance policy who murders or feloniously causes the death of the insured forfeits all rights which he may have in or under the policy. This rule is based upon public policy and upon the principle that no one shall be allowed to benefit from

his own wrong. * * *' 29 Am.Jur. § 1310.

"'It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of the party whose life he had feloniously taken. As well might he recover insurance money upon a building that he had willfully fired.' New York Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, 600, 6 S.Ct. 877, 881, 29 L.Ed. 997.

"Principles so fundamental in the law would seem to require little elaboration.

"The beneficiary who feloniously kills the insured commits a crime against society, a crime against the insured, a wrong against the insurer in that by such criminal act the policy is matured before time.

"To permit him to recover is to reward him for his evil deed, in that the death benefit is matured aforetime, and his claim thereto made absolute. But for his criminal act he may not have the survived the insured.

"Such a reward for wrongdoing is a temptation to others. To offer such reward by closing the door against inquiry into the facts when the beneficiary sues for the death benefit is indeed to reflect upon our jurisprudence."

The basic reasons behind the denial of the right of the husband to inherit from the wife whom he has feloniously killed is so compelling, we now declare that in this jurisdiction he cannot do so.

The exclusion of the murderer from the property benefit does not inflict upon him any greater or other punishment for his crime than the law specifies, and takes no property from him, but simply bars him from acquiring property by his crime, and so obtaining a reward for its commission. The property was that of the deceased, and but for the criminal act, the deceased might have outlived the killer.

By so holding, we are not grafting an exception onto the statute by construction, but are construing the statute according to the obvious intent of the Legislature, who, we know, never intended that a husband who feloniously killed his wife should inherit a part of her separate estate.

Affirmed.

All the Justices concur.