This appeal will examine the question whether a joint tenant who feloniously kills his cotenant can acquire property rights which accrue to him by reason of the death.
Edward Lee Thompson and Peggy Thompson were husband and wife. Each had been previously married and each owned an interest in a lot and house.
On April 12, 1974, each executed a deed conveying their two houses and lots to themselves, "for and during their joint lives and upon the death of either of them, then to the survivor of them in fee simple." Lot 19 of Lakewood Manor Subdivision, the subject property, was owned by Edward Lee Thompson, individually, prior to his marriage to Peggy Thompson.
Edward Lee Thompson was killed on May 17, 1974, and his wife, Peggy Thompson, was indicted for murder in the second degree. Peggy Thompson was subsequently convicted of manslaughter in the first degree and sentenced to five years imprisonment.Thompson v. State, 364 So.2d 681 (Ala.Cr.App. 1976).
During the course of her criminal trial, Peggy Thompson was represented by Kempaner and Dan Moran. As compensation for that representation, Peggy Thompson conveyed Lot 19 of Lakewood Manor Subdivision to Kempaner and Moran. On August 27, 1975, Moran and his wife, Barbara, conveyed their interest in the property to Kempaner.
On January 29, 1976, Aubrey Thompson, as executor of the estate of Edward Lee Thompson, commenced an action in the Circuit Court of Madison County against Peggy Thompson, Richard Kempaner, Dan Moran and Barbara Moran. This action sought to have the joint tenancy with right of survivorship deed executed between Peggy Thompson and Edward Lee Thompson set aside and further to have the deed from Peggy Thompson to Kempaner and Moran set aside on the ground that Peggy Thompson had feloniously killed her husband and thereby forfeited all interest in the property.
Under a pretrial order, Dan and Barbara Moran were dismissed as parties to the action. On August 30, 1979, the case was submitted to a jury on the issue of whether Peggy Thompson had feloniously killed Edward Lee Thompson. The jury returned a verdict which found that "the death of Edward Lee Thompson was caused feloniously *Page 920 
by the criminal agency of Peggy Thompson." On December 7, 1979, the trial court entered the judgment which is the subject of this appeal. On February 6, 1980, Dan and Barbara Moran filed an application to intervene as parties defendant and this application was denied.
The appellant raises three issues on appeal:
(1) Did the trial court err in declaring that the felonious killing of one joint tenant by his cotenant renders void the deed by which their interests were created?
(2) Does the felonious killing of one joint tenant by his cotenant divest the subsequent grantee of the surviving joint tenant of his interest in the property, and, if so, is the grantee divested of his entire interest or only the one-half interest which had belonged to the deceased joint tenant?
(3) Did the trial court err in ruling that Moran and his wife were not necessary parties to the disposition of a declaratory judgment action in which the grantee of the Morans was divested of his entire interest in the property?
In Nunn v. Keith, 289 Ala. 518, 268 So.2d 792 (1972), this Court held:
 In summary, we hold that § 19, as now amended, recognizes joint tenancy, with right of survivorship, as a valid estate in realty or personalty, and that it differs from the common law estate of the same name only in so far as (1) the statutory requirement that the intention to have the right of survivorship must be clearly expressed in the instrument of conveyance, and (2) elimination of the common law unity of time. We further hold that such estate is destructible as at common law.
There appears to be no dispute in this case that the Thompsons intended to and did create a valid joint tenancy with right of survivorship. What is in dispute is the effect of the felonious killing of Edward Lee Thompson by Peggy Thompson on that estate.
This issue does not appear to have been addressed in this state. In Hanna v. Riggs, 333 So.2d 563 (Ala. 1976), this Court dealt with the issue of whether a beneficiary under a life insurance policy was entitled to the proceeds under the policy when the beneficiary had caused the insured's death. There was a question as to whether the killing was, in fact, felonious. Thus, the Court, in Hanna, never reached the issue presented by the present case, although the opinion could be read as holding that if the killing were felonious then the beneficiary could not recover. In any event, Hanna did not in any way involve a joint tenancy estate.
Likewise, a similar issue was presented in Weaver v. Hollis,247 Ala. 57, 22 So.2d 525 (1945). In Weaver, it was held that the felonious killing of a wife by her husband would preclude the husband from sharing in the estate of the wife under the statute of descent and distribution. The basic rationale expressed in Weaver is that one should not be allowed to profit from his wrongdoing.
Although not decided by a court in Alabama, other jurisdictions have considered the question presented by this case and have reached varying results. See, generally, Annot., 42 A.L.R.3d 1116 (1972). Several jurisdictions have allowed the surviving joint tenant who killed the deceased joint tenant to acquire the entire estate. Smith v. Greenburg, 121 Colo. 417,218 P.2d 514 (1950); Anderson v. Grasberg, 247 Minn. 538,78 N.W.2d 450 (1956); Oleff v. Hodapp, 129 Ohio St. 432,195 N.E. 838 (1934); and Di Lallo v. Corea, 19 Pa.D. C. 282 (1933).
Several other jurisdictions have reached the opposite result and held that a joint tenant who feloniously kills his cotenant cannot receive any interest in the property. Sikora v. Sikora160 Mont. 27, 499 P.2d 808 (1972); Merrity v. PrudentialInsurance Company, 110 N.J.L. 414, 166 A. 335 (1933);Bierbrauer v. Moran, 244 App. Div. 87, 279 N.Y.S. 176 (1934); and Re Estate of Bobula, 25 A.D.2d 241, 269 N.Y.S.2d 599,rev'd on other grounds, 19 N.Y.2d 818, 280 N.Y.S.2d 152,227 N.E.2d 49 (1966).
A third result has been reached in other states. This result has been to treat the *Page 921 
felonious killing of one joint tenant by the other as working a severance of the joint tenancy and creating a tenancy in common as to the property. In other words, the property would be divided between the parties such that the surviving joint tenant would receive one-half of the property and the estate of the deceased joint tenant would receive one-half of the property. Johansen v. Pelton, 8 Cal.App.3d 625, 87 Cal.Rptr. 784
(1970); Bradley v. Fox, 7 Ill.2d 106, 129 N.E.2d 699
(1955); Re Estate of Shields, 1 Kan. App. 2d 688, 574 P.2d 229
(1977); and Re King's Estate, 261 Wis. 266, 52 N.W.2d 885
(1952).
At common law a joint tenancy was severed by any act which destroyed any of the four unities of time, title, interest and possession which were required for a joint tenancy to exist. Under the holding in Nunn v. Keith, the four unities are no longer required to be present for a joint tenancy to exist.Nunn held, however, that the joint tenancy estate is destructible as at common law.
At common law, one way in which the joint tenancy could be severed was by the death of one of the joint tenants. Of course, this normally vested the entire estate in the survivor. Thus, in the present case, the joint tenancy between Mr. and Mrs. Thompson was severed by his death. The question presented is whether that severance will operate in furtherance of the survivorship provision of the joint tenancy or whether that severance will operate to create a tenancy in common as to the property since the severance was created by the felonious act of the surviving joint tenant.
As noted above, there are three theories as to the amount of the estate to which the surviving joint tenant should be entitled when the surviving joint tenant has feloniously caused the death of the deceased joint tenant. One theory would allow Mrs. Thompson or her successors in interest to acquire the entire estate. The second theory would deny Mrs. Thompson or her successors any interest in the property. The third theory would sever the joint tenancy, and create a tenancy in common and allow her to "retain" a one-half interest in the property.
Given the rationale expressed in Weaver v. Hollis that one should not be allowed to profit by his wrongdoing, and the holding in Nunn v. Keith that the common law doctrine of destructibility of joint tenancies is recognized in Alabama, the result most consistent with Alabama law is the third alternative; that is, where one joint tenant feloniously causes the death of his fellow joint tenant the joint tenancy is severed and a tenancy in common is thereby created. As a result of the severance of the joint tenancy and the creation of the tenancy in common, the surviving joint tenant will "retain" a one-half interest in the property and a one-half interest in the property will pass to the estate of the deceased joint tenant.
In this case, we hold that at the time of Edward Lee Thompson's death Peggy Thompson owned a one-half interest in Lot 19 at Lakewood Manor Subdivision and the remaining one-half interest in that property was owned by the estate of Edward Lee Thompson. Thus, Peggy Thompson could have conveyed to Kempaner and Moran no more than a one-half interest in the property. The judgment of the trial court which awarded the entire interest in the property to the estate of Edward Lee Thompson is erroneous and is due to be reversed.
The final issue raised by the appellant is whether the trial court erred in ruling that Dan and Barbara Moran were not necessary parties to the disposition of the declaratory judgment action. Under Rule 19, ARCP, a person must be joined if he claims any interest relating to the subject of the action. In the present action, both parties, in brief, agree that the Morans conveyed whatever interest they had in Lot 19, Lakewood Manor Subdivision to Kempaner; therefore, the trial court did not err in ruling that the Morans were not necessary parties to the disposition of the action.
Based on the foregoing, the judgment of the trial court is due to be affirmed in part and reversed in part and judgment rendered in accordance with this opinion. *Page 922 
AFFIRMED, IN PART; REVERSED AND RENDERED, IN PART.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.