MURDOCK, Justice.
Arvest Bank (“Arvest”) petitions this Court for a writ of mandamus directing the Autauga Circuit Court to vacate its order denying Arvest’s motion to quash a writ of execution obtained by Iberiabank f/k/a Capitalsouth Bank (“Iberia”) against real property owned by Evelyn L. Niland (“Evelyn”) and to issue an order granting the motion. We treat the petition as an appeal, and we reverse and remand.
I. Facts
The facts in this case are undisputed and were recounted in the trial court’s final order of September 7, 2015:
“1. On July 8, 2004, Thomas M. Karrh, II, transferred the property that Iberia seeks to sell (‘the property’) to Raymond E. Niland [ (‘Raymond’) ] and Evelyn L. Niland as joint tenants with right of survivorship.
“2. On August 8, 2007, the Nilands quit-claimed the property to [Evelyn], removing [Raymond’s] name from the title.
“3. In October of 2008, [Raymond] stopped paying an existing indebtedness to Iberia.[1]
*622 “4. On March 26, 2009, Iberia obtained a judgment against [Raymond] for $124,589.56.
“5. On April 9, 2009, Iberia filed its judgment for record in the probate office of Autauga County, creating a lien on all of [Raymond’s] property in the county.
“6. On September 11, 2012, [Evelyn] transferred the property back to herself and [Raymond], attempting to create a joint tenancy with right of survivorship. The Nilands executed á mortgage to Arvest Bank the same day.'
“7. [Raymond] died on December 5, 2012, less than, three months after title was returned to his name.”
In January 2015, Iberia secured.a writ of execution against the property, which was amended on June 15, 2015, to include postjudgment interest. On August 10, 2015, Arvest, as the mortgage holder, moved to intervene and to quash the scheduled sheriffs sale .of the property. The trial court granted the motion to intervene, stayed the sale pending further argument, and set a hearing for August 28, 2015. On August 26, 2015, Iberia filed an opposition to the motion to quash-the sheriffs sale.
■ On September 7, 2015, the trial court denied the motion to quash the sheriffs sale and vacated its previous order staying the sheriffs sale. On October 1, 2015, Ar-vest filed this petition for a writ of mandamus, after which the trial court received a supersedeas bond and again stayed the sheriffs sale.
II. Standard of Review
For reasons that will be explained in the analysis below, we believe this mandamus petition should be treated as an appeal. Thus, we do not apply the standard of review ordinarily associated with a mandamus petition. The trial court in this case applied the law to undisputed facts. Our review on appeal therefore is de novo.
‘“When this Court must determine if the trial court misapplied the law to the undisputed facts, the standard of review is de novo, and no presumption of correctness is given the decision of the trial court. State Dep’t of Revenue v. Garner, 812 So.2d 380, 382 (Ala.Civ.App.2001); see also Ex parte Graham, 702 So.2d 1215 (Ala.1997).’ ”
American Res. Ins. Co. v. H & H Stephens Constr., Inc., 939 So.2d 868, 873 (Ala.2006) (quoting Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue, 855 So.2d 513, 516-17 (Ala.2003)).
III. Analysis •
A. Iberia’s Motions to Dismiss
. Iberia has filed two motions to dismiss Arvest’s petition. In its first motion, Iberia contends that this Court has never formally determined that a ruling on a motion to quash an execution is reviewable by a petition for a writ of mandamus. Iberia cites early cases from this Court stating that a motion to quash an execution was reviewable by a writ of error, the predecessor to an appeal.[2] See, e.g., Howard v. Kennedy’s Ex’rs, 4 Ala. 592 (1843) (reviewing an order refusing to set- aside a judgment and execution in ejectment by writ of error); Creighton v. Denly, Minor 250, 250 (Ala. 1824) (reversing by writ of error a trial court’s denial of a motion to quash a writ of execution). “[T]he Code of .1852 abolished the writ of error as the method of bringing civil cases to [the supreme] court for review, and ... established appeal as the remedy.” Theo. Poull & Co. v. Foy-Hays Constr. Co., 159 Ala. 453, 458, 48 So. *623 785, 785 (1909). Consequently, Iberia argues, “the court has since reviewed rulings on motions to quash by appeal.”
In this regard, Iberia’s position is well taken. There are ample examples of this Court reviewing a motion to quash an execution by way of an appeal.[3] Here, Ar-vest seeks review of a final judgment; its petition to this Court is properly .treated as an appeal. See generally Kirksey v. Johnson, 166 So.3d 633, 643 (Ala.2014) (noting that “[t]his Court has treated a notice of appeal as a petition for a writ of mandamus ,.. and, conversely, treated a petition for a writ of mandamus as a notice of appeal”).[4]
In its second motion to dismiss Ar-vest’s mandamus petition, Iberia contends that the petition is untimely because it was not filed within 14 days of the date of the trial court’s order it seeks to have reviewed. Iberia reasons that Arvest’s mandamus petition is actually an appeal from an interlocutory order under Rule 4(a)(1)(A), Ala. R. App. P. Iberia contends that Arvest seeks review of an order dissolving an injunction because the trial court’s September 7, 2015, order vacated a stay of the sheriffs sale that it had ordered on August 11, 2015. Specifically, Iberia contends that “[t]he ‘stay' order dated August 11,- 2015, was an ‘injunction’ because it ‘prevented] an action’: namely, the Sheriffs Sale.” It further argues that “[t]he order dated September 7, 2015— that Arvest contests—was an ‘order dissolving an injunction’ because it dissolved the injunction issued on August 11, 2015, which prevented the Sheriffs Sale.”
There are several problends with Iberia’s argument. To begin with, it contradicts the trial court’s view of its September" 7, 2015, order. In that order, the trial court stated: “There are no other issues before the court; this is a final order disposing of all parties and issues.” (Emphasis added.) Indeed, Iberia does not point to -anything that remains for the trial court to adjudicate in this matter, and nothing presents itself from the materials before us. The trial court’s order cleared the way for the sheriffs sale of the property to proceed. There were no other issues before the trial court. Given that the September 7, 2015, order was a final order, Arvest’s submission to this Court could not be considered an interlocutory appeal.
Moreover, a review of the procedural history of this case shows that Iberia misconstrues what Arvest seeks to have reviewed by this Court. Iberia, initially secured its writ of execution on January 26, 2015. On June .12, 2015, it amended the writ to include postjudgment interest. Ar- *624 vest filed a motion to intervene on August 10, 2015. On August 11, 2015, the trial court granted Arvest’s motion to intervene and entered an order stating that “the Sheriffs Sale scheduled for August 17, 2015 is stayed pending further Order” of the court. On September 7, 2015, the trial court entered its order denying Arvest’s motion to quash execution of the sheriffs sale. Arvest filed its petition for a writ of mandamus on October 1, 2015.
Arvest’s motion to quash was not a, motion requesting an injunction but, rather, a request that the trial court nullify the writ of.execution of Iberia’s judgment. Arvest was not seeking a delay; it was seeking a nullification. The stay the trial court imposed was solely for the sake of giving the parties time to prepare, and the trial court time to hear, arguments concerning Ar-vest’s motion to quash. Merely because the trial court’s September 7, 2015, order had the effect of dissolving that stay does not mean that Arvest is seeking review in this Court of the dissolution. Clearly, Arvest is seeking review of the denial of the motion to quash the execution of the judgment. Therefore, Arvest is not seeking review of an order dissolving an injunction under Rule 4(a)(1)(A), Ala. R. App. P.
Based on the foregoing, Iberia’s motions to dismiss Arvest’s petition are denied. Review by appeal is appropriate in this case. Arvest filed its petition within the 42-day period for filing an appeal under Rule 4(a)(1), Ala. R. App. P., and provided an appropriate supersedeas bond;
B. Review of the Trial Court’s Judgment
Arvest in essence argues that the trial court erred in declining to grant its motion to quash Iberia’s writ of execution because, it says, the trial court misunderstood the effect Raymond’s death had on Iberia’s judgment hen in the context of a joint tenancy with a right of survivorship. Arvest contends that Iberia’s claim was extinguished when Raymond died and Evelyn assumed sole ownership of the property. Iberia offers various arguments in response to this contention, some of which mirror the trial court’s reasoning. For the reasons explained below, we believe that Arvest’s argument reflects an accurate understanding of the law.
The trial court provided the following reasons in its September 7, 2015, order for why Iberia could execute its judgment lien on Evelyn’s property:
“1. Iberia’s judgment lien attached to Mr. Niland’s interest in ‘the property simultaneously with Mrs. Niland’s conveyance to him on September 11, 2012.
“2. Iberia’s judgment lien therefore takes priority over, or primes, the sur-vivorship feature of the deed, if it is effective. It is unnecessary for the court to decide whether the conveyance of September 11, 2012, was effective to create a joint tenancy with right of surviv-orship. Mr. Niland owned an undivided, one-half interest in the property at his death.
“3. If the deed created a survivorship estate, then when Mr. Niland died on December 5, 2012, his one-half interest in the property ‘passfed] to the surviving joint tenant,’ Mrs. Niland, subject to Iberia’s lién. Ala. Code § 35-4-7 (1975). If the deed did not create a survivorship estate, then Mr. Niland’s one-half interest in the property passed to his estate subject to Iberia’s lien.
“4. Section 6-9-93[, Ala. Code 1975,] preserves Iberia’s right to execute ‘against any property on which the judgment was a lien at the time of the death of the defendant [Mr. Niland] ... in the same manner ... as if the defendant were living.’ Consequently, Iberia may now execute on Mr. Niland’s one-half interest in the property.”
*625 ■ The first problem with the trial court’s reasoning is that it is absolutely necessary to determine whether Raymond and Evelyn in fact created a joint tenancy with right of survivorship in the conveyance of September 11, 2012, in order to decide whether Iberia’s judgment lien is attached to the property. This Court observed in Johnson v. Keener, 425 So.2d 1108, 1109 (Ala.1983);
“Where a conveyance provides for concurrent ownership with the survivor to receive the fee, analysis of the surviv- or’s interest must begin with determining whether the grantees took as tenants in common or as joint tenants. See Durant v. Hamrick, 409 So.2d 731, 738 (Ala.1981). If they took as tenants in common, then the estate created is characterized as a tenancy in common with indestructible cross-contingent remainders in fee to the survivor.”
In contrast,
“[a]t common law a joint tenancy was severed by any act which destroyed any of the four unities of time, title, interest and possession which were required for a joint tenancy to exist. Nunn [v. Keith, 289 Ala. 518, 268 So.2d 792 (1972),] held ... that the joint tenancy estate is destructible as at common law.
“At common law, one way in which the joint tenancy could be severed was by the death of one of the joint tenants. Of course, this normally vested the entire estate in the survivor.”
Kempaner v. Thompson, 394 So.2d 918, 921 (Ala.1981).
In other words, if the Nilands created a tenancy in common, then upon Raymond’s death a one-half interest in the property would pass through his estate, and Evelyn would own the other half of the property. If they created a joint tenancy with a right of survivorship, then upon Raymond’s death Evelyn owned the entire property in fee. See, e.g., Porter v. Porter, 472 So.2d 630, 632 (Ala.1985) (observing that “[t]he major distinction between a tenancy in eommon and a joint tenancy is that the intérest held by tenants in common is de-visable and descendible, whereas the interest held by joint tenants passes automatically to the last survivor”); Fitts v. Stokes, 841 So.2d 229, 231 (Ala.2002) (“If the joint tenancy was not extinguished, Betty Stokes owned the entire interest in the property upon the death of Richard Fitts by virtue of her right of survivorship. If the divorce judgment extinguished the joint tenancy, both Wanda Fitts- [Richard Fitts’s second wife] and Betty Stokes [Richard .Fitts’s first wife] would have a one-half interest in the property as tenants in common.”).-
Section 35-4-7, Ala. Code 1975, provides:
“When one joint tenant dies before, the severance, his interest does not survive .to the other joint tenants but descends and vests as if his interest had been severed and ascertained; provided, that in the event it is stated in the instrument creating such tenancy that such tenancy is with right of survivor-ship or other words used therein showing such intention, then, upon the death of one joint tenant, his interest shall pass to the surviving joint tenant or tenants according to the intent of such instrument. This shall include those instruments of conveyance in which the grantor conveys to himself and one or inore other persons and in which instruments it clearly appears that the intent is to create such a survivorship between joint tenants as is herein contemplated.”
(Emphasis added.)
This Court has stated (referring to § 19, Title 47, Code of Alabama 1940, the identical predecessor Code provision of § 35^4- *626 7) that this section “recognizes joint tenancy, with right of survivorship in realty and personalty. The statute requires intent of survivorship expressed in the instrument of conveyance, and eliminates common law unity of time. Nunn v. Keith, 289 Ala. 518, 268 So.2d 792 (1972).” Germaine v. Delaine, 294 Ala. 443, 445, 318 So.2d 681, 682 (1975),
There is no dispute that the Ni-lands met the requirement in § 35-4-7 of clear intent to create a right of survivor-ship. The warranty deed by which Evelyn conveyed the property to herself and Raymond was titled “Warranty Deed Jointly for Life with Remainder to Survivor,” and the text of the deed stated that Evelyn conveyed the property to Evelyn and Raymond “for and during their joint lives,-and upon the death of either of them, then to the survivor of them in fee simple, together with every contingent remainder and right of reversion.”
Iberia does dispute that Raymond and Evelyn met the common-láw requirements of unity of interest and title.[5] Iberia contends that its judgment lien attached to Raymond’s interest in the property the moment the property was transferred into his name by the warranty deed. Iberia argues that, “[a]s a result, there was never a unity between [Evelyn’s] ‘title’ or ‘interest’ and [Rhymond’s] ‘title’ or ‘interest.’ [Raymond’s] title was encumbered by Iberia’s lien, but [Evelyn’s] title was not. [Evelyn’s] title was ‘good,’ but [Raymond’s] title was ‘bad.’ ”
Iberia misunderstands the concepts of unity of interest and unity of title in the context of a joint tenancy.
“Unity of title meant that all must acquire title by -the same deed or will or by a joint adverse possession. Unity of interest meant that the joint tenants must have identical interests both as to , the share of the common property and as to the period of duration of the interest of each. One could not take as a life tenant and the other in fee or in fee tail; one could not have a one-fourth interest and the other three-fourths.”
2 American Law of Property § 6.1, 5-6 (A. James Cásner ed., 1952) (footnotes omitted). As .for unity of title, there is no question that Raymond and Evelyn acquired title by the same deed. As for unity of interest, if the September 11, 2012, deed was effective at all, it was effective in accordance with its terms, thereby vesting in both Raymond and Evelyn an estate in fee simple held by joint tenancy. The fact that, upon its conveyance, Raymond’s interest in the property became encumbered by a lien did not affect the unity of title or interest.
“[T]he judgment lien does not invest the [creditor] with title, hence [the creditor] has no estate in the land and is not a joint owner, and his judgment only attaches to the undivided interest of [the judgment debtor], which is subject to sale under execution issued in the name of [the judgment creditor], or the lien may be enforced in equity.”
Hargett v. Hovater, 244 Ala. 646, 648, 15 So.2d 276, 278 (1943). In other words, the judgment lien does not alter or diminish the intrinsic nature of the interest in the land held by the debtor; it does not oper *627 ate to make the "debtor’s interest in the land of a different nature than that of the cotenant. It therefore does not change the “unity of interest” of the joint tenants.[6]
Because the warranty deed conveying the property to Raymond and Evelyn contained a clear expression of intent to create a joint tenancy with a right of survivor-ship that fulfilled the unities of interest, title, and possession, Evelyn and Raymond created a joint tenancy with a right of survivorship.
Iberia is correct, and Arvest concedes, that because the judgment was recorded, the-lien attached to Raymond’s interest in the property upon.its conveyance to him in September 2012. See, e.g., W.T. Rawleigh Co. v. Patterson, 239 Ala. 309, 311-12, 195 So. 729, 730 (1940) (stating that “[t]he statutory judgment lien attaches to property of the debtor subject to levy and sale, acquired after the registration of the judgment’’); Shrout v. Seale, 287 Ala. 215, 217, 250 So.2d 592, 594 (1971) (observing that “[o]n the recording of the judgment certificate, the judgment lien attached to the life estate of Farmer Seale”).
But in order for the judgment lien to attach to Raymond’s property interest, Raymond must' first have or receive a property interest. Here, the interest Raymond received—the only interest he received pursuant to the September 11, 2012, deed—was a specific one, i.e., a joint tenancy with right of survivorship. The nature and limitations of this interest were first defined- by the deed conveying- that interest to him; the recorded judgment could effect! a lien only as to that -interest. The conveyance to Raymond—such as- it is— must come before any lien attaches to that interest.
This Court has noted:
“Recording a judgment is not the same as execution on a judgment. The filing of the judgment ... only creates a lien in favor , of the judgment creditor and .although this filing can preserve assets for the creditor, in the event an execution later occurs, filing has no other interlocking aspects with execution on the judgment.”
Kiker v. National Structures, Inc., 342 So.2d 746, 748 (Ala.1977). In other words, as is implicit from the passage from Har-gett quoted above, recording a judgment lien in itself does not sever a joint tenancy. Execution on a judgment severs a joint tenancy—but not the mere recording of a lieh. See 48A C.J.S. Joint Tenancy § 53 (2014) (stating that “[a] levy on and sale of a joint tenant’s interest pursuant to a judgment against him or her terminates the joint tenancy”).
American Jurisprudence puts it this way:
“The mere docketing of a judgment against a joint tenant,- even though a lien results from it, does not result in a severance of a joint estate. A judgment *628 lien against the interest of a joint tenant is not, of itself, sufficient to operate as a severance of the joint tenancy, since if the judgment debtor should die prior to execution on, sale of, or expiration of the period of redemption after sale of the property subject to the lien, the surviving tenant becomes the sole owner of the property, free from any lien by reason of the judgment.”
20 Am. Jur. 2d Cotenancy and Joint Ownership § 30 (2015) (footnotes omitted; emphasis added). See John W. Fisher II, Creditors of a Joint Tenant: Is There a Lien After Death? 99 W. Va. L. Rev. 637, 641 (1997) (explaining that, at common law, “it was generally recognized that the recovery of a judgment, without the execution thereon, did not sever survivorship”). See also Albright v. Creel, 236 Ala. 286, 289, 182 So. 10, 13 (1938) (opinion on rehearing) (noting that “the judgment, execution, and levy on the interest of Oscar Greathouse was evidence of a severance of the joint tenancy between Oscar and his mother”).
In the words of the Hargett Court, the “judgment only attaches to the undivided interest of [the judgment debtor],” whatever that interest may be. 244 Ala. at 648, 15 So.2d at 278.
“The lien of a judgment attaches to the precise interest or estate which the judgment debtor has actually and effectively in the property, and only to such interest.
“... Stated another way, a judgment creditor cannot acquire more property rights in a property than those already held by the judgment debtor.”
50 C.J.S. Judgments § 787 (2009).
Iberia could have a lien only against whatever property Raymond held. Thus, we examine closer the “precise interest” Raymond held as a result of the September 11, 2012, conveyance.
“An estate in joint tenancy is one held by two or more persons jointly, with equal rights to share in its enjoyment during their lives, and having as its distinguishing feature the right of survivor-ship. Because of this right of survivor-ship, upon the death of a joint tenant, the entire estate goes to the survivor or, in the case of more than two joint tenants, to the survivors, and so on to the last survivor. The estate passes free and exempt from all charges made by the deceased cotenant or cotenants.”
20 Am. Jur. 2d Cotenancy and Joint Ownership § 4 (2015) (footnotes omitted). “ ‘[T]he right of survivorship ... is the sine qua non of joint tenancy.’ ” Watford v. Hale, 410 So. 2d 885, 886 (Ala.1982) (quoting Mann v. Bradley, 188 Colo. 392, 395, 535 P.2d 213, 215 (1975)). “The principal practical aspect of a joint tenancy consists in the fact that on the death of one of the joint tenants, no severance of his interest having theretofore occurred, the exclusive title inures to the surviving joint tenant or tenants.” Annot., What Acts by One or More Joint Tenants Will Sever or Terminate the Tenancy? 64 A.L.R.2d 918, 922 (1959).
In this case, it is apparent that no severance of the joint tenancy occurred during Raymond’s lifetime. The joint mortgage executed by Evelyn and Raymond did not effect a severance. See 48A C.J.S. Joint Tenancy § 2 (2014) (explaining that “[a] mortgage to two or more persons as security for a single debt due to them jointly may be also held in joint tenancy”). More important in terms of the present issue, as we have seen from the above-quoted authorities, the judgment lien did not sever the joint tenancy because Iberia did not file an execution on the judgment during Raymond’s lifetime.
*629 Because no severance of the tenancy occurred until Raymond’s death, the entire estate in the property vested in Evelyn at Raymond’s death because Raymond’s interest ceased at that time. The judgment lien did not attach to Evelyn’s interest because she assumed sole ownership of the property by virtue of the deed; Raymond’s interest did not pass to her.[7] Because a joint tenant’s property interest ceases at death, and because Iberia could hold only the same interest in the property that Raymond possessed, it follows that Iberia’s claim on Raymond’s property interest was extinguished when Raymond died. Indeed, in Fretwell v. Fretwell, 283 Ala. 424, 426, 218 So.2d 138, 140 (1969), this Court noted the idea that “a surviving joint tenant becomes the absolute owner of the property held in joint tenancy upon the death of the cotenant, free of the claims of the heirs, because the survivor does not acquire title through the deceased but by virtue of the deed.” (Emphasis added.)
The rule governing this case is one with ancient roots: “So it is if one joint-tenant acknowledge a recognizance or a statute, or suffereth a judgment in an action of debt, ... and dieth before execution had, it shall not be executed afterwards. But if execution be sued in the life of the [cogni-zor], it shall bind the survivor.” 1 Sir Edward Coke, Systematic Arrangement of Lord Coke’s First Institute of the Laws of England 582 (1836).
“In consequence of the right of surviv-orship among joint-tenants, all charges made by a joint-tenant on the estate determine by his death, and do not affect the survivor; for it is a maxim of law that jus accrescendi proefertur oneribus [The right of survivorship is preferred to encumbrances]. ... But if the grantor of the charge survives, of course, it is good. ... So, if one joint-tenant suffers a judgment in an action of debt to be entered up against him, and dies before execution had, it will not be executed afterwards; but if execution be sued in the life of the cognizor, it will bind the survivor. ...”
1 William Blackstone, Commentaries on the Laws of England 148 n.13 (Edward Christian et al., eds., W.E. Dean 1848).
It is also an understanding that has been almost universally adopted.
“According to the authorities cited in the annotation, it may be stated that in general, where land is held by joint tenants, one of whom is a judgment debtor, the mere docketing of the judgment does not effect a severance of the joint estate, and if the debtor dies before levy of execution, the judgment creditor loses his rights against the debtor’s interest, all of which passes to the surviving joint tenant .... ”
Annot., Rights and Remedies of Judgment Creditors or of Purchasers under Execution, 111 A.L.R. 171,172 (1937).
“It appears that all of the courts which have considered this issue in situations where the debtor-tenant died pri- or to execution, sale, or expiration of the period of redemption after sale have concluded that the lien did not sever the joint tenancy, reasoning that upon the death of the debtor that party’s interest went to the survivor and therefore there *630 ■was no property interest to which the lien could attach.”
Francis M. Daugherty, Judgment Lien or Levy of Execution on One Joint Tenant’s Share or Interest as Severing Joint Tenan-c% 51 A.L.R.4& 906 (1987). See also 20 Am. Jur. 2d and 50 C.J.S., supra; 48A C.J.S. Joint Tenancy § 3 (2014) (observing that “[a] joint'tenancy ends, and the right of survivorship terminates once there is only a single surviving joint tenant as the last survivor holds the entire interest in the property, free from thé claims of the heirs or creditors of the deceased coten-ant”).[8]
One of the many cases reaching the foregoing conclusion explained well the reasoning behind and the fairness of the rule:
/‘The legal proposition thus presented can. be stated as follows: Where real property is held by joint tenants, one of whom is a judgment debtor, and the judgment debtor dies prior to a levy of execution but after an abstract of the judgment has been recorded, and a levy of execution is made after the death of the judgment debtor against the interest of the debtor, does the purchaser at the execution sale secure any rights in the property, or does the surviving joint tenant take the entire property free and clear of the lien of the judgment?
“It is well settled in this and other states that, while all joint tenants are alive, execution may be had upon the interest of one of the joint tenants, and that upon the purchase of the interest of that joint tenant at execution sale the joint tenancy is severed and the purchaser and the other joint tenant or tenants become tenants in common. See *631 cases collected and commented on in 111 A.L.R. 171; Pepin, v. Stricklin, 114 Cal. App. 32[, 299 P. 557 (1931) ]; Hilborn v. Soale, 44 Cal.App. 115[, 185 P. 982 (1919)]. The question, in the present case, is whether a judgment lien on the interest of one joint tenant prior to execution severs .the joint tenancy. We are of the opinion that it does not.
“The right of survivorship is the chief characteristic that distinguishes a joint tenancy from other interests in property. The surviving joint tenant does not secure that right from the deceased joint tenant, but from the devise or conveyance by which the joint tenancy was first created. (Green v. Skinner, 185 Cal. 435[, 197 P. 60 (1921) ].) While both joint tenants are alive each has a specialized form of a life estate, with what amounts to a contingent remainder in the fee, the contingency being dependent upon which joint tenant survives. The judgment lien of respondent could attach only to the interest of his debtor, William B.,Nash. That interest terminated upon Nash’s death. After his death there was no interest to levy upon. Although the title of the execution purchaser dates back to the date of his lien, that doctrine' Only applies when the rights of innocent third parties have not intervened. Here the rights of the surviving joint tenant intervened between the date of the lien and the date of the sale. On the latter date the deceased joint tenant had no interest in--the property, and his judgment creditor has no greater rights.
« .
“This rule is sound in theory and fair in its operation. When a creditor has a judgment lien against the interest of one joint tenant he can immediately execute and • sell the interest of his judgment debtor, and thus sever the joint tenancy, or he can keep his lien alive and wait until the joint tenancy is terminated-by the death of one of the joint tenants. If the judgment debtor survives, the judgment lien immediately attaches to the entire property. If the judgment debtor is the first to die, the lien .is lost., If the creditor sits back to await this- contingency, as respondent did in this case, he assumes the risk of losing his lien.”
Zeigler v. Bonnell, 52 Cal.App.2d 217, 219-22, 126 P.2d 118, 119-21 (1942). See, e.g., Toma v. Toma, 163 P.3d 540, 544-45 (Okla. 2007); Jamestown Terminal Elevator, Inc. v. Knopp, 246 N.W.2d 612, 614 (N.D.1976); Northern State Bank v. Toal, 69 Wis.2d 50, 56, 230 N.W.2d 153, 156 (1975); and Musa v. Segelke & Kohlhaus Co., 224 Wis. 432, 272 N.W. 657, 658 (1937).
As contrary authority Iberia cites Dieden v. Schmidt, 104 Cal.App.4th 645, 128 Cal.Rptr.2d 365 (2002), and a couple of other California appellate court cases that relied' upon Dieden, but the situation , in Dieden differed from the one presented in this case and those cited above as authorities in one key respect: The original property interest held by the judgment debtor was not a joint tenancy, but a tenancy in common. The facts in Dieden were as follows:
“In 1981, Benjamin and Conchita Dieden sued Stanley Schmidt. The Died-ens lost and the court entered judgment for Schmidt. The court awarded Schmidt his attorney fees and costs. Schmidt recorded an abstract of judgment (the first abstract) and obtained a lien against real property located in Berkeley owned by the Diedens. Schmidt, however, did not force a sale of the Berkeley property.
“In- 1991, First Nationwide Bank made a loan to the Diedens secured by a deed of trust on the Berkeley property.
“Schmidt renewed his judgment in 1992, but only, against Benjamin Dieden. Schmidt then recorded a second abstract *632 of judgment. It is undisputed that at the time Schmidt recorded this abstract, the Diedens owned the Berkeley property as tenants in common.
“In 1994, the Diedens conveyed their interests in the Berkeley property to themselves as joint tenants.
“In 1998, Benjamin Dieden filed a complaint against Schmidt to quiet title to the Berkeley property. Benjamin, however, died in 1999, leaving Conchita as the surviving joint tenant.”
Dieden, 104 Cal.App.4th at 648-19, 128 Cal.Rptr.2d at 367-68 (footnote omitted; emphasis added). Conchita Dieden argued that Schmidt’s lien expired upon Benjamin Dieden’s death because they held the property as joint tenants at that time. But the court rejected her argument, reasoning:
“As Schmidt points out, however, his judgment lien attached to Benjamin Dieden’s interest as a tenant in common, before the creation of any right of sur-vivorship. Until the hen was satisfied or extinguished, it was enforceable against Benjamin’s interest in the Berkeley property regardless of who held that interest. Under Code of Civil Procedure section 697.390, subdivision (a), a subsequent conveyance or encumbrance of an interest in real property subject to a judgment lien does not affect the lien. Further, under section 695.070, the judgment lien may be enforced against the property in the same manner and to the same extent as if there had been no transfer, even after the death of the judgment debtor. (Id., § 695.070.)
“In fact there is some logical appeal to Schmidt’s argument that after the transfer, the judgment lien could be enforced against the entire property because the property interest Benjamin conveyed to himself was subject to the lien (see e.g., Code Civ. Proc, § 697,340, subd. (b)), as was the interest conveyed to Conchita. Once again, however, it is the language of the Code of Civil Procedure sections 697.390 and 695.070 that controls. Under those sections, Schmidt may enforce his judgment in the same manner and to the same extent as if the property had never been transferred. (See Oliver v. Bledsoe (1992) 5 Cal.App.4th 998, 1009[, 7 Cal. Rptr.2d 382] [lienholder’s rights against the property remain as they were before the transfer].) Therefore, Schmidt retained his lien against a one-half interest in the property as if the transfer and Benjamin’s death never occurred.
“Zeigler [v. Bonnell, 52 Cal.App.2d 217, 126 P.2d 118 (1942),] is inapposite here. The judgment lien in Zeigler attached to an existing joint tenancy interest. There was no transfer of property from one form of ownership to joint tenancy.”
Dieden, 104 Cal.App.4th at 650-52, 128 Cal.Rptr.2d at 369-70 (footnote omitted; some emphasis added).
As we noted above, the property interest to which Iberia’s judgment lien attached was Raymond’s interest in the joint tenancy with Evelyn because that was the property interest conveyed to Raymond. In that context, Iberia’s claim was extinguished when Raymond’s interest in the property ceased upon his death. In contrast, in Dieden the property interest to which Schmidt’s judgment lien attached was Benjamin Dieden’s interest as a tenant in common with his wife. Under California’s civil code, the Diedens’ transfer of the property to themselves as joint tenants did not change the nature of the interest Schmidt held by virtue of his judgment lien; therefore, Benjamin’s death had no effect on the survival of Schmidt’s claim.
*633 As Arvest notes, there are only two instances by statute under which a writ of execution may issue after a debtor’s death, and these are prescribed in Ala. Code 1975, §§ 6-9-62 and 6-9-63. Iberia does not contend on appeal that § 6-9-62 is applicable in this case, as it plainly is not because that statute applies only when the writ of execution is “issued and received by the sheriff during the lifetime of the defendant,” and that was not the case here. Iberia does argue, however, that § 6-9-63 provides it a statutory right to proceed with the sheriffs sale.
Section 6-9-63 provides:
“After six months from the date of the grant of letters testamentary or of administration on the estate of any defendant, in a judgment for money, execution thereof may be had by leave of the court entering the judgment, or of the judge thereof, upon cause shown, against any property on which said judgment was a lien at the time of the death of the defendant, and a sale of such property may be made in the same manner and with the same effect as if the defendant were living. In case of the death of the defendant in a judgment for the recovery of real or personal property, execution may be had without revival in the same manner as if the defendant had not died.”
Iberia argues that § 6-9-63 does not contain an exception for judgments against a property interest of a joint tenant and that, therefore, it has a right to have the property at issue in this case sold “in the same manner and with the same effect as if [Raymond] were living.”
The primary problem with this argument is that, in context, § 6-9-63 refers to executing upon property in the estate of the defendant. The introductory clause of § 6-9-63 provides: “After six months from the date of the grant of letters testamentary or of administration on the estate of any defendant, in a judgment for money, execution thereof may be had.” This language clearly indicates that the judgment will be executed upon property in the estate. As we have already noted, however, a joint tenant’s property interest in the tenancy— unlike a tenant in common’s interest—does not pass into the tenant’s estate upon death if he or she is survived by another joint tenant. Instead, the property interest is extinguished and the surviving tenant owns the property in fee under the conveying instrument. Therefore, § 6-9-63 is not applicable in this situation. Indeed, as Ar-vest notes:
“Section 6-9-63 was adopted as part of the Code of Alabama of 1907 as section 4096.... This statute was adopted during the period of outright abolition of joint tenancies in Alabama that existed from the 1818 Act of the Alabama Territorial Legislature until 1945 when Ala. Acts No. 505 was adopted. At the time of the adoption of Ala. Code § 6-9-63 tenancies in common were the only form of co-ownership and joint tenancies did not exist.”
See, e.g., Nunn v. Keith, 289 Ala. 518, 523, 268 So.2d 792, 797 (1972) (explaining that “the purpose behind the passage of the original statute [the predecessor to § 35-4-7, Ala. Code 1975,] was to abolish common law joint tenancies with their inherent right of survivorship. .,. Subsequently, in 1945, the legislature amended the statute (Title 47, § 19) to make it possible tó convey in joint tenancy, with right of sur-vivorship, simply by expressly stating such intention in the instrument of conveyance”). Thus, § 6-9-63 was not written with joint tenancies in mind inasmuch as such tenancies do not implicate the estate of the deceased.
Because it is clear that Raymond and Evelyn created a joint tenancy with a right *634 of survivorship in the September 11, 2012, deed, and because Raymond’s interest in the property to which Iberia’s judgment lien attached was extinguished upon his death, Iberia has no interest in the property. It follows that Iberia lacks the authority to obtain a writ of execution on its judgment lien against the property. Therefore, the trial court erred in refusing to grant Arvest’s motion to quash the writ of execution.
IV. Conclusion
Based on the foregoing, we reverse the trial court’s order denying Arvest’s motion to quash the writ of execution and remand the case for that court to enter an order granting Arvest’s motion.
MOTIONS TO DISMISS DENIED; REVERSED AND REMANDED.
Stuart, Parker, Shaw, Main, Wise, and Bryan, JJ., concur.
Bolin; J., concurs in the result.

. The debt consisted of two promissory notes Raymond executed to Capitalsouth Bank in October 2007. Capitalsouth Bank was acquired by Iberiabank in September 2012.

. "A writ of error constitutes a direct attack on the judgment, and ... an appeal by writ of error is simply another mode of appeal.” 4 C.J.S. Appeal and Error § 30 (2007).

. See, e.g., State ex rel. O'Dell v. Coker, 59 So.3d 670; 672 (Ala.2010); Wingard v. Little, 883 So.2d 677, 679 (Ala.Civ.App.2003); Cauthen v. Norman, 224 Ala. 371, 371, 140 So. 565, 565 (1932); McDaniel v. Johnston, 110 Ala. 526, 527, 19 So. 35, 36 (1895); Harrison v. Hamner, 99 Ala. 603, 12 So. 917 (1893) (reversing order granting a motion to .quash an execution on the bond); Scheuer v. King, 100 Ala. 238, 239, 13 So. 912, 912 (1893); Sheffey v. Davis, 60 Ala. 548, 550 (1877); and Chambers v. Stone, 9 Ala. 260, 261 (1846).

. Although there are cases in which this Court has reviewed disputes over executions by way of petitions for a writ of mandamus, dióse commonly involved execution orders in service of or as part of some underlying dispute or litigation. See, e.g., Ex parte Alfab, Inc., 586 So.2d 889 (Ala.1991) (denying mandamus petition seeking to set aside trial court order staying execution of previously es-crowed funds pending appeal of an underlying .judgment); Ex parte Alabama Mobile Homes, Inc., 468 So.2d 156 (Ala.1985) (reviewing on the merits denial of motion to quash garnishment); and Ex parte Mid-Continent Sys., Inc., 470 So.2d 677 (Ala.1985) (denying mandamus petition seeking review of denial of motion to quash certain garnishments and executions).

. The Nunn Court held that the version of joint tenancy recognized in § 35-4-7
"differs from the common law estate of the same name only in so far as (1) the statutory--requirement that the intention to have the right of survivorship must be clearly expressed in the instrument of conveyance, and (2) elimination of the common law unity of time. We further hold that such estate is destructible as at common law,”
Nunn v. Keith, 289 Ala. 518, 524, 268 So.2d 792, 797(1972).

. In support of its argument Iberia cites Stewart v. AmSouth Mortgage Co., 679 So.2d 247, 249 (Ala.Civ.App.1995), which held that "a mortgage by one joint tenant severs the joint tenancy” because " ‘a mortgage was a conveyance, so it necessarily destroyed the unities of title and interest.' 4 Thompson on Real Property § 31.08(b) at 49 (Thomas ed. 1994).” But a mortgage by this understanding is different than a judgment lien. Unlike a mortgage, a lien does not transfer ownership of properly; it simply gives the judgment creditor a claim against any property owned by the judgment debtor. See Wozniak v. Wozniak, 121 Wis.2d 330, 334, 359 N.W.2d 147, 149 (1984) (explaining that "[wjhile a mortgage serves as security for a particular piece of property, a judgment lien ordinarily is riot a lien on any specific real estate of the judgment debtor but is a general lien on all of the debtor’s real property”). Hence a lien by itself does not interfere with the unities of a joint tenancy or cause a severance thereof.

. As one treatise on property law explains:
"Survivorship is central to a joint tenancy. The joint tenant who survives the other cotenants takes the entire estate; the estates of deceased joint tenants have no interest. Theoretically the survivor’s interest attaches by means of the original conveyance, not by transfer from the decedent.”
Creation of Joint Tenancy, 7 Powell on Real Prop. (MB) ¶ 51.03[3] (June 2013) (footnotes omitted).

. Iberia contends that Raymond’s interest in the property did not cease to exist upon his death because § 35-4-7 states that "upon the death of one joint tenant, his interest shall pass to the surviving joint tenant.” Iberia argues that the statutory language means that Raymond’s interest in the property and the attached lien passed to Eveyln upon Raymond’s death. Iberia’s only support for this interpretation is Johnson v. Keener, 425 So.2d 1108, 1109-10 (Ala.1983),. which Iberia cites for the proposition that § 35-4-7 "modifies the common law estate of joint tenancy with right of survivorship.” But in Nunn v. Keith, 289 Ala. 518, 268 So.2d 792 (1972), and other cases, the Court made it clear that § 35-4-7 modified the common law only in the senses that the conveying instrument must clearly provide for a right of survivorship and the unity of time is not required to create a joint tenancy.'
Alabama cases are united with other authorities in indicating that the last survivor of a joint tenancy takes full ownership under the .conveying instrument, not because the deceased joint tenant passed an interest to the surviving joint tenant. Indeed, the whole discussion in Johnson of tenancies in common with cross-contingent remainders versus joint tenancies with a right of survivorship is based on this assumption. The interest'of the deceased joint tenant "passes” in the sense that the surviving joint tenant attains full ownership rather than sharing full ownership with the deceased joint tenant’s heirs. As one court has explained it:
"In a legal sense, [the deceased joint tenant’s] death does not transfer the rights that he possessed in the property to the surviving tenants. Death does not enlarge or change the estate. Death terminates [the deceased joint tenant’s] ■ interest in the estate. It is rather a falling away of the tenant from the estate than the passing of the estate to others.”
Fleming v. Fleming, 194 Iowa 71, 174 N.W. 946, 953 (1919), modified on reh’g, 194 Iowa 71, 184 N.W. 296 (1921). See also In re Estate of MacFarline, 14 P.3d 551, 558 n.5 (Okla. 2000) (stating that "[t]his survivorship right does not pass anything from a deceased joint tenant to the survivor upon the death of the former since, by the very nature of the tenancy, title of the joint tenant who dies first terminates at death and vests eo instanti (i.e., immediately) in the survivor. ... Because joint tenants are seised of the whole, while alive, the survivor’s interest is simply a continuation, or extension, of his/her existing interest”). t